## IN THE UNITED STATES DISTRICT COURT FOR

## THE EASTERN DISTRICT OF WISCONSIN

HUPY & ABRAHAM, S.C.,

      Plaintiff,

                                      Case No:

v.

QUINTESSA LLC d/b/a
QUINTESSA MARKETING,

      Defendant.

## CIVIL COMPLAINT

The Plaintiff, Hupy & Abraham, S.C., acting by and through their attorneys, Hupy and Abraham, S.C., by Attorney Todd R. Korb, file this Original Complaint against the Defendant, Quintessa LLC, and alleges and shows to the Court as follows:

### JURISDICTION AND VENUE

1.     The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 as this action seeks monetary damages resulting from the Defendant's actions in an amount exceeding seventy-five thousand dollars ($75,000.00), and there is complete diversity of citizenship between the Plaintiff and the Defendant.

2.     Venue is present in this District pursuant to 28 U.S.C. § 1391(b)(2) as the judicial district in which the Plaintiff resides and a substantial part of the events or omissions giving rise to the claims occurred. Moreover, it is the location to which the contracted for "bulk marketing" was directed and retained "plaintiffs" resided.

## PARTIES

3.     The Plaintiff, Hupy & Abraham, S.C., is a corporation, organized and existing under the laws of Wisconsin, with its principal place of business located at 111 East Kilbourn Avenue, Suite 1100, Milwaukee, Wisconsin, Zip Code 53202; that the registered agent in Wisconsin for the Plaintiff is Jason F. Abraham, also located at 111 East Kilbourn Avenue, Suite 1100, Milwaukee, Wisconsin, Zip Code 53202; that the Plaintiff operates as a personal injury law firm within the States of Wisconsin, Illinois, and Iowa; and that the Plaintiff does not do business in Oklahoma.

4.     The Defendant, Quintessa LLC, is a limited liability company, organized and existing under the laws of Oklahoma, with its principal place of business located at 1900 NW Expressway, Suite 1600, Oklahoma City, Oklahoma, Zip Code 73118; that upon information and belief the Registered Agent in Oklahoma for the Defendant is Lauren McNeil, located at 1900 NW Expressway, Suite 1600, Oklahoma City, Oklahoma, Zip Code 73118; that the Defendant also does business as Quintessa Marketing; that the Defendant provides "bulk marketing" services for law firms throughout the United States, including Wisconsin, Illinois, and Iowa; that the Defendant advertises itself as a "full service platform" in marketing for, screening, qualifying and signing "plaintiffs" involved in motor vehicle collisions for representation; that the Defendant is a named defendant herein pursuant to the theory of vicarious liability, including the doctrine of *Respondeat Superior*, in that it is liable for the actions of its employees, agents, servants, representatives, and/or volunteers, herein Mike Walker (hereinafter "Mr. Walker") and Lauren Mingee (hereinafter "Ms. Mingee"), while in the course and scope of their employment or agency; and that Mr. Walker and Ms. Mingee at all relevant times were acting in the course and scope of their employment or agency with the Defendant.

## FACTUAL BACKGROUND

5.     On or about January 7, 2021, the Plaintiff entered into a trial contract (hereinafter "trial contract") with the Defendant, where the Plaintiff made a payment of twelve thousand dollars ($12,000.00) in exchange for the Defendant's "bulk marketing" services to market for, screen, qualify, and sign-up "plaintiffs" involved in motor vehicle accidents; and that the subject contract is attached herein as Exhibit 1.

6.     In this trial contract, the parties agreed that the Plaintiff could turn down or disengage a "plaintiff" if they: (1) were cited at fault; (2) had property damage under one thousand five hundred dollars ($1,500.00); (3) were involved in a collision without insurance coverage; and (4) had no medical treatment within fourteen (14) days of the injury.

7.     Upon entering the trial contract, the Plaintiff supplied the Defendant with its retainer contracts so that "plaintiffs" in Wisconsin, Illinois, and Iowa could be retained by the Defendant using the Plaintiff's retainers.

8.     During the month of January 2021, the Defendant supplied to the Plaintiff thirty-nine (39) retained "plaintiffs"; and that as of the filing of this Complaint the retained "plaintiffs" the Plaintiff withdrew from representing approximately twenty-six (26) "plaintiffs".

9.     During the course of this trial contract, it came to Plaintiff's attention that it had received a few retainers where the "plaintiffs" did not meet one or more of the qualifications enumerated in the trial contract.

10.     On January 25, 2021, the Plaintiff, by its Director of Marketing Jill Wellskopf (hereinafter "Ms. Wellskopf"), reached out to the Defendant regarding the disqualified "plaintiffs" and asked the Defendant to review its screening criteria to ensure the "plaintiffs" retained qualified pursuant to the trial contract's terms.

11.     Despite this, the Defendant refunded all but approximately four (4) retained "plaintiff" charges to the Plaintiff's pre-funded account, resulting in the Plaintiff's account being deducted six thousand four hundred dollars ($6,400.00).

12.     Additionally, it came to the Plaintiff's attention that the Defendant was retaining "plaintiffs" that were expecting the Plaintiff to provide them with medical treatment. Accordingly, on January 26, 2021, the Plaintiff, by Ms. Wellskopf, informed that Defendant that the Plaintiff does not set up medical treatment for "plaintiffs"; therefore, when an allegedly injured "plaintiff" is presented to the Plaintiff this "plaintiff" is encouraged to seek treatment on their own and without direction from the Plaintiff. This is done to allow the "plaintiff" to be comfortable with their treatment and receive the treatment which they desire.

13.     Based off the experience with the trial contract, the Plaintiff expressed interest in entering a new contract with the Defendant on or around February 1, 2021.

14.     During the contract negotiations, on or around February 1, 2021, the Plaintiff inquired as to the monthly rate of signed retainers it could expect from the Defendant's services in Wisconsin, Illinois, and Iowa.

15.     In response the Defendant, by its Director of Business Operations Mr. Walker, asserted to the Plaintiff that per month "150 to 200 [qualified retainers were] not out of the question."

16.     Later on February 3, 2021, the Plaintiff, by Ms. Wellskopf, asked the Defendant if it had the ability to provide "3 to 4 [retainers]" per day or 120 leads per month.

17.     The Defendant, by Mr. Walker, responded that "we have the capability to provide 100+ [signed retainers per month] with proper funding."

18.     On February 3, 2021, the Plaintiff and the Defendant entered into a second contract (hereinafter "the contract"); and that the contract is attached herein as Exhibit 2.

19.     In the contract, the Defendant agreed to provide its "bulk marketing" services for the Plaintiff by marketing for potential "plaintiffs" for the Plaintiff's business; that the Defendant's services also included screening the potential "plaintiffs" to ensure they do not meet criteria that permitted the Plaintiff to turn down or disengage; and that once the Defendant determined a "plaintiff" qualified, the Plaintiff gave the Defendant limited authority to have the qualifying "plaintiff" sign the Plaintiff's retainer agreement for representation.

20.     Pursuant to the contract, the approved reason for the parties to disengage or turndown a "plaintiff" was: (1) if the "plaintiff" was cited as the at fault; (2) the subject collision had property damage under one thousand five hundred dollars ($1,500.00); (3) that there was no insurance coverage for the collision; (4) that the "plaintiff" did not obtain medical treatment within fourteen days of the injury; and (5) that the "plaintiff" was not injured during the subject collision.

21.     Additionally in the contract, the Defendant asserts that it may limit turndowns to "35%" of all delivered motor vehicle accident leads but that the Defendant would not reduce below this cap.

22.     In exchange for the Defendant's "bulk marketing" services, the Plaintiff was required to pre-fund its marketing account with one hundred thousand dollars ($100,000.00); and that out of this pre-funded account the Plaintiff also agreed to pay the Defendant one thousand six hundred dollars ($1,600.00) for each qualifying motor vehicle accident retainer and four thousand five hundred dollars ($4,500.00) for each qualifying commercial motor vehicle accident retainer.

23.     Both February 3, 2021 and January 7, 2021 contracts were drafted by the Defendant; and that at no point during the two contracts did the Plaintiff travel to Oklahoma for purposes of negotiating or drafting these contracts.

24.     On February 3, 2021, the Plaintiff emailed the executed contract to the Defendant and pre-funded its marketing account with the Defendant with one hundred thousand dollars ($100,000.00).

25.     At all relevant times hereto, the Defendant was in possession of unearned funds within the Plaintiff's pre-funded marketing account.

26.     After entering into the contract, the Defendant began engaging "plaintiffs" and having them execute the Plaintiff's retainer agreement; that the Defendant began tracking individuals it made contact with on behalf of the Plaintiff in an online portal; that the purpose of this portal was to offer real-time communication of the "plaintiff's" name and other basic contact and incident information; and that the Plaintiff was only granted access to use: (1) the disengage button; and (2) the note field.

27.     During the month of February 2021, the Defendant is estimated to have retained approximately forty-two (42) allegedly qualifying "plaintiffs".

28.     During the month of March 2021, the Defendant is estimated to have retained approximately fifty-eight (58) allegedly qualifying "plaintiffs".

29.     During the month of April 2021, the Defendant is estimated to have retained approximately forty-four (44) allegedly qualifying "plaintiffs".

30.     As of the filing of this Complaint, during the month of May, the Defendant is estimated to have retained two (2) allegedly qualifying "plaintiffs".

31.     However, it became apparent to the Plaintiff that the Defendant was not fulfilling its contractual duties of screening "plaintiffs" to confirm they met the minimum criteria enumerated in the contract before signing them to Plaintiff's contingency fee contract.

32.     For example, on or around March 26, 2021, the Defendant retained on the Plaintiff's behalf a "plaintiff" who had already settled their motor vehicle claim with the insurance company.

33.     Additionally, the Defendant mislabeled "plaintiffs" as qualifying commercial motor vehicle accidents, charging the Plaintiff for the incorrect rate of four thousand five hundred dollars ($4,500.00) for each incorrectly retained "plaintiff" despite these "plaintiffs" not being involved in commercial collisions.

34.     As a result, the Plaintiff repeatedly and diligently requested the Defendant to relabel these incorrectly classified commercial "plaintiffs" and to adjust the fee charged to the Plaintiff's account accordingly.

35.     From February 3, 2021 to May 4, 2021, the Plaintiff identified that approximately six (6) retained "plaintiffs" were mislabeled as being involved in commercial collisions, resulting in overcharges of seventeen thousand four hundred dollars ($17,400.00) against the Plaintiff's account; and that as of the filing of this Complaint two thousand nine hundred dollars ($2,900.00) has not been reversed to the Plaintiff's account.

36.     Similarly, the Defendant also failed to honor the contract's disengagement terms, by which the Defendant was required to credit back the pre-funded money to the Plaintiff's account upon timely notice that the retained "plaintiff" did not qualify within "five to seven business days."

37.     For example, on March 31, 2021, the Plaintiff brought to the Defendant's attention that it had filed a disengagement notice for a "plaintiff" within 168-hour timeframe with a reason that there was no insurance and no treatment within fourteen (14) days after accident. The Defendant, via its Founder and CEO Ms. Mingee, stated these were not valid disengagement reasons, contrary to both of these reasons being in the contract.

38.     Despite the Plaintiff's good faith and diligent efforts in reviewing the "plaintiffs" retained by the Defendant, it became quickly obvious that the 168-hour review period to turn down or disengage retained "plaintiffs" was not workable.

39.     On March 29, 2021, the Plaintiff, by Ms. Wellskopf, told the Defendant that this timeline was not feasible because: (1) police reports are usually not available within 168-hours; (2) insurance coverage cannot be accurately determined within 168-hours; and (3) that the "plaintiff's" status of treatment is difficult to determine because the Defendant was still engaging with the client who often lament to the Plaintiff that they are confused whether the Defendant or the Plaintiff represent them. Accordingly, Ms. Wellskopf asked if the Defendant would be interested in amending the terms of the contract to permit for a thirty (30) day disengagement time period.

40.     That during this email, Ms. Wellskopf indicated that she was aware of twenty-five (25) "plaintiffs" that the Plaintiff had paid for out of its account but, subsequently, the Plaintiff withdrew representation once documents, such as police reports, came to the Plaintiff's possession and demonstrated that the "plaintiffs" were disqualified pursuant to the contract.

41.     Again, on April 1, 2021, the Plaintiff, by its Vice President, Attorney Jason F. Abraham (hereinafter "Mr. Abraham"), indicated to the Defendant that the 168-hour deadline

was unworkable and inquired if the Defendant would be interested in altering the terms of the contract.

42.     In response to both aforementioned requests to amend the terms of the contract, the Defendant declined to amend the disengagement timeframe.

43.     On April 1, 2021, the Plaintiff provided the Defendant with thirty (30) day notice that it was not looking to renew the contract, pursuant to the contract's terms.

44.     That on the same day, the Defendant, by Ms. Mingee, confirmed receipt of the Plaintiff's thirty (30) day non-renewal notice via email.

45.     During the course of this notice, the Plaintiff again asked the Defendant to: (1) review and credit to the Plaintiff's account twenty-nine (29) cases where unqualified "plaintiffs" were retained but disengaged after the 168-hour deadline due to difficulty in gathering necessary information to discern whether or not these "plaintiffs" qualified for representation; and (2) refund the remaining unspent funds in the Plaintiff's account. At this time approximately one hundred and one thousand and four hundred dollars ($101,400.00) was the amount of "unspent" funds in the Plaintiff's account.

46.     On the same day, the Defendant again refused to credit any retainers disengaged or turned down outside the 168-hour window. Additionally, the Defendant said it would not be refunding any of the remaining funds in the Plaintiff's account.

47.     Additionally, the Defendant, by Ms. Mingee, told the Plaintiff that contrary to the contract's provisions, no treatment within fourteen (14) days of the accident was not a valid reason for retainer rejection, because it was the Plaintiff's responsibility to provide treatment for its clients.

48.     At or around the same time, the Defendant, by Ms. Mingee, also admitted to the Plaintiff that this contract was better suited for law firms that manufacture treatment for their "plaintiffs."

49.     At no time during the trial contract or the contract was it stipulated that the Plaintiff agreed to obtain medical treatment on behalf of the "plaintiffs"; and that it is Plaintiff's interpretation of the contract that the qualifying factor of no treatment within fourteen (14) days does not require the Plaintiff to press the "plaintiff" to seek treatment if retained within the fourteen (14) day window, rather it was incumbent upon the "plaintiff" to seek treatment on their own within the fourteen (14) day window.

50.     After providing notice of intent not to renew the contract, the Defendant consistently failed to timely respond to the Plaintiff's correspondence or disengagement notices.

51.     The Plaintiff, by Mr. Abraham, sent two emails dated April 1, 2021 and April 8, 2021, to Ms. Mingee regarding cases pending disengagement review by the Defendant.

52.     When Ms. Mingee responded on April 9, 2021, she said that she was unable to provide information about the twenty-nine (29) pending cases at that time and would take additional time to review these cases.

53.     On the same day Ms. Mingee also indicated that the Defendant would not credit any past retainers that were outside of the 168-hour window due to the Plaintiff not renewing the contract; and that she also asserted that the Defendant's disengagement rates were thirty percent (30%) of the retained "plaintiffs", which was a different rate than what was quoted in the contract.

54.     Similarly, on April 2, 2021, the Plaintiff, by Ms. Wellskopf, sent to the Defendant's agent Mr. Walker an email requesting status updates on five (5) disengagements that

had been submitted by the Plaintiff in the prior two (2) weeks but the Plaintiff still had not received credits returned to their account within the five (5) to seven (7) business days as prescribed by the contract. In response, Ms. Mingee told Ms. Wellskopf that she would have to wait at least another week for her to look into the Plaintiff's account without guarantee that the credits would be returned to the Plaintiff's account.

55.     After the Plaintiff indicated its intention to not renew the contract, it became clear that the Defendant significantly decreased the number of retainers provided to the Plaintiff, despite Ms. Mingee's prior declaration to keep supplying retainers until the account was depleted.

56.     For example, the Plaintiff did not receive a single retainer from the Defendant's service on: April 1 through April 5, 2021; April 15, 2021; April 17, 2021; April 21, 2021; April 30 through May 2, 2021.

57.     Likewise, the quality of "plaintiffs" referred to the Plaintiff also decreased after the Plaintiff gave notice to not renew the contract.

58.     For example, Ms. Wellskopf on April 7, 2021, alerted the Defendant that a "plaintiff" admitted she was "at fault". The Defendant responded that it would only credit back the fee for this "plaintiff" if the Plaintiff supplied a police report to the Defendant, which was not a requirement previously enumerated in the subject contract.

59.     Likewise, on or around April 13, 2021, the Defendant sent to the Plaintiff a "plaintiff" who had told the Plaintiff that they did not even want attorney representation for their accident and was confused as to the relationship between the Defendant and the Plaintiff.

60.     Similarly, on April 18, 2021, the Defendant submitted to the Plaintiff a "plaintiff" who had backed out of a driveway into a parked car and asserted that this met the criteria listed within the contract.

61.     As of May 4, 2021, the Plaintiff's contract ended; however, there are fifty-four thousand three hundred dollars ($54,300.00) remaining in the Plaintiff's account; and that of the filing of this lawsuit these funds are still in the Defendant's possession.

62.     As of May 5, 2021, the Plaintiff by Mr. Abraham and Ms. Wellskopf both made demands via email to the Defendant to immediately refund the balance in the Plaintiff's account because the contract is silent as to refunding accounts after the thirty (30) day notice therefore refunds should have been given at the end of the contract period; and that the subject emails attached herein as Exhibit 3.

63.     At no point during these two contracts did the Plaintiff or its agents ever travel to Oklahoma; that the Plaintiff did not retain any "plaintiffs" from Oklahoma; and that the Defendant solicited the Plaintiff by its agents in Wisconsin.

64.     As of May 4, 2021, the Plaintiff conducted a thorough and exhaustive review of the one hundred forty-six (146) "plaintiffs" retained by Defendant on the Plaintiff's behalf from February 3, 2021 to May 4, 2021 by the Defendant.

65.     That as of May 4, 2021, approximately six (6) "plaintiffs" were determined by the Plaintiff to not be qualified under the contract's terms due to lack of insurance. That of these unqualified "plaintiffs" the Defendant refused to credit back to the Plaintiff's account for approximately two (2) of these "plaintiffs" resulting in a loss of approximately three thousand two hundred dollars ($3,200.00) to the Plaintiff.

66.     That as of May 4, 2021, approximately one (1) "plaintiff" were determined by the Plaintiff to not be qualified under the contract's terms due to property damage being under one thousand five hundred dollars ($1,500.00). That of these unqualified "plaintiffs" the Defendant refused to credit back to the Plaintiff's account for zero (0) of these "plaintiffs" resulting in a loss of zero dollars ($0.00) to the Plaintiff.

67.     That as of May 4, 2021, approximately fourteen (14) "plaintiffs" were determined by the Plaintiff to not be qualified under the contract's terms due to lack of treatment within fourteen (14) days after the accident. That of these unqualified "plaintiffs" the Defendant refused to credit back to the Plaintiff's account for approximately ten (10) of these "plaintiffs" resulting in a loss of approximately eighteen thousand and nine hundred dollars ($18,900.00) to the Plaintiff.

68.     That as of May 4, 2021, approximately thirteen (13) "plaintiffs" were determined by the Plaintiff to not be qualified under the contract's terms due to the "plaintiff" being labeled at fault. That of these unqualified "plaintiffs" the Defendant refused to credit back to the Plaintiff's account for approximately four (4) of these "plaintiffs" resulting in a loss of approximately fifteen thousand and one hundred dollars ($15,100.00) to the Plaintiff.

69.     That as of May 4, 2021, approximately nine (9) "plaintiffs" were determined by the Plaintiff to not be qualified under the contract's terms due to no reported injuries. That of these unqualified "plaintiffs" the Defendant refused to credit back to the Plaintiff's account for approximately one (1) of these "plaintiffs" resulting in a loss of approximately three thousand two hundred dollars ($3,200.00) to the Plaintiff.

70.     That as of May 4, 2021, of the approximately thirty-four (34) commercial retainers the Plaintiff received from the Defendant's "bulk marketing" services approximately

six (6) were improperly labeled as commercial when in fact there was no commercial motor vehicle involvement. This resulted in the Plaintiff being charged a total of approximately twenty-seven thousand five hundred dollars ($27,500.00) for improperly labeled retainers, with the Defendant refusing to credit back one (1) of these retainers resulting in a loss of two thousand nine hundred dollars ($2,900.00) to the Plaintiff.

71. That as of May 4, 2021, approximately two (2) "plaintiffs" were determined by the Plaintiff to not qualify under the contract's terms because the "plaintiffs" had already settled their underlying tort claim prior to communicating with the Defendant. That of these unqualified "plaintiffs" the Defendant refused to credit back to the Plaintiff's account for zero (0) of these "plaintiffs" resulting in a loss of zero dollars ($0.00) to the Plaintiff.

72. That as of May 4, 2021, approximately three (3) "plaintiffs" were determined by the Plaintiff to not qualify under the contract's terms because the "plaintiffs" resided outside of Wisconsin, Illinois, and Iowa. That of these unqualified "plaintiffs" the Defendant refused to credit back to the Plaintiff's account for zero (0) of these "plaintiffs" resulting in a loss of zero dollars ($0.00) to the Plaintiff.

73. That as of May 4, 2021, approximately twelve (12) "plaintiffs" were determined by the Plaintiff to not qualify under the contract's terms because the "plaintiffs" did not respond to the Plaintiff's correspondence after the Defendant's initial engagement of the retainer relationship. That of these unqualified "plaintiffs" the Defendant refused to credit back to the Plaintiff's account for approximately two (2) of these "plaintiffs" resulting in a loss of approximately three thousand two hundred dollars ($3,200.00) to the Plaintiff.

74. That as of May 4, 2021, approximately eleven (11) "plaintiffs" informed the Plaintiff that they were not interested in representation by the Plaintiff despite the Defendant

submitting the "plaintiffs'" information to the Plaintiff. That of these disinterested "plaintiffs" the Defendant refused to credit back to the Plaintiff's account for approximately four (4) of these "plaintiffs" resulting in a loss of approximately eight thousand dollars ($8,000.00) to the Plaintiff.

75.     That as of May 4, 2021, the Plaintiff had alerted the Defendant that approximately eleven (11) "plaintiffs" did not qualify pursuant to the terms of the contract, but that the Defendant did not credit the Plaintiff's account within the five (5) to seven (7) days pursuant to the contract.

76.     That as of May 4, 2021, the Plaintiff believes that it has paid the Defendant for approximately twenty-seven (27) "plaintiffs" who for the reasons mentioned above did not qualify pursuant to the terms of the contract. This has resulted in a loss of approximately fifty-four thousand five hundred dollars ($54,500) to the Plaintiff.

## FIRST CAUSE OF ACTION-VIOLATION OF THE WISCONSIN DECEPTIVE TRADE PRACTICES ACT, WIS. STAT. § 100.18

77.     The Plaintiff fully incorporates paragraphs 1-76 as if fully set forth herein.

78.     That in attempting to advertise, market, and sell the "bulk marketing" services, the Defendant, by and through its agent Mr. Walker, made an express representation to the Plaintiff that it could provide "150 to 200" qualifying "plaintiffs" within Wisconsin, Illinois, and Iowa per month. Likewise, the Defendant, by and through its agent Mr. Walker, also said to the Plaintiff that it would easily provide "100+" retainers per month with proper funding.

79.     That the Defendant did not honor this express representation, because during this contract's three (3) month term, the Defendant retained on the Plaintiff's behalf approximately one hundred forty-six (146) "plaintiffs" but only approximately forty-six (46) qualifying

"plaintiffs" were actually retained despite the Plaintiff's account to have proper funding at all relevant times.

80.     That the Plaintiff would not have entered into the contract if the Defendant had honestly enumerated the monthly rate of qualifying "plaintiffs" retained within Wisconsin, Illinois, and Iowa as this would have been less than the rate represented by Mr. Walker to the Plaintiff.

81.     That this express representation was false, deceptive, and/or misleading; and therefore done in violation of Wis. Stat. § 100.18, thereby causing the Plaintiff's damages totaling one hundred thousand dollars ($100,000.00).

## SECOND CAUSE OF ACTION-BREACH OF CONTRACT, WISCONSIN

82.     The Plaintiff fully incorporates paragraphs 1-81 as if fully set forth herein.

83.     That the Plaintiff entered into a contract on February 3, 2021 for "bulk marketing" services with the Defendant; and that said contract stated that the Defendant would screen potential "plaintiffs" pursuant to the qualifying factors enumerated within the contract.

84.     That the Plaintiff at all times fully performed all of its conditions and obligations under the contract.

85.     That the Defendant materially breached said contract by repeatedly failing to screen "plaintiffs" to ensure their qualifications prior to retaining said "plaintiffs" on behalf of the Plaintiff.

86.     That the Defendant was repeatedly afforded multiple opportunities to cure its material breach of contract by the Plaintiff.

87.     As a result of the Defendant's material breach, the Plaintiff incurred damages and believes that the current amount is approximately one hundred thousand dollars ($100,000.00).

## THIRD CAUSE OF ACTION-BREACH OF CONTRACT, WISCONSIN

88.   The Plaintiff fully incorporates paragraphs 1-89 as if fully set forth herein.

89.   That the Plaintiff entered into a contract on February 3, 2021 for "bulk marketing" services with the Defendant; and that under said contract the Defendant was required to timely provide disengagement credits for unqualified "plaintiffs" reported by the Plaintiff.

90.   That the Plaintiff at all times fully performed all of its conditions and obligations under the contract.

91.   That the Defendant was and still remains in material breach of contract for failure to timely provide disengagement credits for approximately eleven (11) unqualified "plaintiffs" within the five (5) to seven (7) days pursuant to the contract.

92.   That the Defendant was afforded multiple opportunities to cure its material breach of contract but has not cured its material breach in total.

93.   As a result of the Defendant's material breach, the Plaintiff incurred damages and believes that the current amount is approximately one hundred thousand dollars ($100,000.00).

## FOURTH CAUSE OF ACTION-BREACH OF IMPLIED DUTY OF GOOD FAITH, WISCONSIN

94.   The Plaintiff fully incorporates paragraphs 1-93 as if fully set forth herein.

95.   Under Wisconsin law, a contract requires that each party act in good faith towards the other party and deal fairly with that party when performing the expressed terms of the contract.

96.   In this case, the Plaintiff claims the Defendant had an obligation to use good faith when performing the following contractual term of screening prospective "plaintiffs" prior to retaining them on behalf of the Plaintiff.

97. As to this term, the Plaintiff claims that the Defendant breached the contract's good faith obligation by failing to fully screen the prospective "plaintiffs" resulting in numerous "plaintiffs" having to be disengaged.

99. That the Defendant's breach resulted in damages to the Plaintiff totaling approximately one hundred thousand dollars ($100,000.00).

## FIFTH CAUSE OF ACTION-BREACH OF IMPLIED DUTY OF GOOD FAITH, WISCONSIN

100. The Plaintiff fully incorporates paragraphs 1-99 as if fully set forth herein.

101. Under Wisconsin law, a contract requires that each party act in good faith towards the other party and deal fairly with that party when performing the expressed terms of the contract.

102. In this case, the Plaintiff claims the Defendant had an obligation to use good faith when performing the following contractual term of returning funds of timely disengaged "plaintiffs" pursuant to the qualifying factors in the contract.

103. As to this term, the Plaintiff claims that the Defendant breached the contract's good faith obligation by failing to timely credit charges to the Plaintiff's account when notified that a "plaintiff" was not qualifying pursuant to the contract.

105. That the Defendant's breach resulted in damages to the Plaintiff totaling approximately one hundred thousand dollars ($100,000.00).

## SIXTH CAUSE OF ACTION-BREACH OF IMPLIED DUTY OF GOOD FAITH, WISCONSIN

106. The Plaintiff fully incorporates paragraphs 1-105 as if fully set forth herein.

107. Under Wisconsin law, a contract requires that each party act in good faith towards the other party and deal fairly with that party when performing the expressed terms of the contract.

108. In this case, the Plaintiff claims the Defendant had an obligation to use good faith when performing the following contractual term of returning funds of marketing for, screening, qualifying, and signing up "plaintiffs" within the life of the contract.

109. As to this term, the Plaintiff claims that the Defendant breached the contract's good faith obligation by failing to provide "plaintiffs" after receiving the Plaintiff's notice to not renew the contract on April 1, 2021.

110. That the Defendant's breach resulted in damages to the Plaintiff totaling approximately one hundred thousand dollars ($100,000.00).

## SEVENTH CAUSE OF ACTION-INTENTIONAL MISREPRESENTATION, WISCONSIN

111. The Plaintiff fully incorporates paragraphs 1-110 as if fully set forth herein.

112. The Defendant made the representation of fact, by and through its agent Mr. Walker, that it could provide "150 to 200" qualifying "plaintiffs" per month within Wisconsin, Illinois, and Iowa. Likewise, the Defendant, by and through its agent Mr. Walker, also said to the Plaintiff that it would easily provide "100+" retainers [per month] with proper funding.

113. That said representation was untrue, because during the three (3) month life of the subject contract the Plaintiff only received approximately one hundred forty-six (146) retainers but only forty-six (46) of these retainers qualified pursuant to the contract.

114. The Defendant knew said representation was untrue or made said representation recklessly without caring whether it was true or false.

115. The Defendant made the representation with intent to deceive and induce the Plaintiff to enter into the contract upon the representation of qualifying retainer amounts, all to the Plaintiff's damage.

116. The Plaintiff believed such representation to be true and justifiably relied on it to its damage; and that said damages total approximately one hundred thousand dollars ($100,000.00).

117. That as the misrepresentation relates to a material part of the contract, the Plaintiff also asks the Court to rescind the contract pursuant to *Mueller v. Harry Kaufman Motorcars, Inc.*, 2015 WI App. 8, ¶ 41, 359 Wis. 2d 597, 859 N.W.2d 451.

## EIGHTH CAUSE OF ACTION-STRICT LIABILITY MISREPRESENTATION, WISCONSIN

118. The Plaintiff fully incorporates paragraphs 1-117 as if fully set forth herein.

119. The Defendant made a representation of fact when the Defendant in attempting to advertise, market, and sell the "bulk marketing" services, made an express representation to the Plaintiff that it could provide "150 to 200" qualifying "plaintiffs" within Wisconsin, Illinois, and Iowa per month. Likewise, the Defendant, by and through its agent Mr. Walker, also said to the Plaintiff that it would easily provide "100+" per month retainers with proper funding.

120. That said representation was untrue, because during the three (3) month life of the subject contract the Plaintiff only received approximately one hundred forty-six (146) retainers but only forty-six (46) of these retainers qualified pursuant to the contract.

121. The Defendant, by its employee Mr. Walker, made the representation based on his personal knowledge, or was so situated that he necessarily ought to have known the untruth of the statement.

122.    The Defendant had an economic interest in receiving several hundred thousands of dollars by the Plaintiff executing the contract.

123.    The Plaintiff believed that the representation was true and justifiably relied on it all to the Plaintiff's damage; and that said damages total approximately one hundred thousand dollars ($100,000.00).

### NINTH CAUSE OF ACTION-PUNITIVE DAMAGES, WISCONSIN

124.    The Plaintiff fully incorporates paragraphs 1-123 as if fully set forth herein.

125.    The aforementioned acts by the Defendant are intentional wrongs; and that it has breached its duty imposed by the contract, and has unreasonably withheld services agreed upon.

126.    The Defendant acted intentionally and knew, or should have known, that its actions constituted willful, wanton, and reckless disregard for the rights of the Plaintiff.

127.    The Plaintiff through its Attorneys, Hupy & Abraham, S.C., hereby makes a claim for punitive damages due to intentional, willful, and wanton acts of the Defendant.

### TENTH CAUSE OF ACTION-VIOLATION OF OKLAHOMA CONSUMER PROTECTION ACT, 15 OKL. ST. § 761.1

128.    The Plaintiff fully incorporates paragraphs 1-127 as if fully set forth herein.

129.    That during in attempting to advertise, market, and sell the "bulk marketing" services, the Defendant, by and through its agent Mr. Walker, made misleading statements about its product's quantity and quality. Specifically, the Defendant made an express representation to the Plaintiff that it could provide "150 to 200" qualifying "plaintiffs" within Wisconsin, Illinois, and Iowa per month. Likewise, the Defendant, by and through its agent Mr. Walker, also said to the Plaintiff that it would easily provide "100+" retainers per month with proper funding.

130.    That the Defendant made a misrepresentation that deceived, or could be reasonably expected to deceive or mislead the Plaintiff, because during this contract's three (3)

month term, the Defendant retained on the Plaintiff's behalf approximately one hundred forty-six (146) "plaintiffs" but the Plaintiff has retained approximately forty-six (46) qualifying "plaintiffs" despite the Plaintiff's account to have proper funding at all relevant times.

131.    That the Plaintiff would not have entered into the contract if the Defendant had honestly enumerated the monthly rate of qualifying "plaintiffs" within Wisconsin, Illinois, and Iowa as it would have been less than the rate represented by Mr. Walker to the Plaintiff.

132.    That as a result of the Defendant's deceptive trade practice, the Plaintiff suffered damages for the statutory limit of ten thousand dollars ($10,000.00).

### ELEVENTH CAUSE OF ACTION-BREACH OF CONTRACT, OKLAHOMA

133.    The Plaintiff fully incorporates paragraphs 1-132 as if fully set forth herein.

134.    The Plaintiff entered into a contract on February 3, 2021 for "bulk marketing" services with the Defendant; and that said contract stated that the Defendant would screen potential "plaintiffs" pursuant to the qualifying factors enumerated within the contract.

135.    That the Plaintiff at all times fully performed all of its conditions and obligations under the contract.

136.    That the Defendant materially breached said contract by repeatedly failing to screen "plaintiffs" to ensure their qualifications prior to retaining said "plaintiffs" on behalf of the Plaintiff.

137.    That the Defendant was repeatedly afforded an opportunity to cure its material breach of contract by the Plaintiff.

138.    As a result of the Defendant's material breach, the Plaintiff incurred damages and believes that the current amount is approximately one hundred thousand dollars ($100,000.00).

## TWELFTH CAUSE OF ACTION-BREACH OF CONTRACT, OKLAHOMA

139. The Plaintiff fully incorporates paragraphs 1-138 as if fully set forth herein.

140. The Plaintiff entered into a contract on February 3, 2021 for "bulk marketing" services with the Defendant; and that under said contract the Defendant was required to timely provide disengagement credits for unqualified "plaintiffs" reported by the Plaintiff.

141. That the Plaintiff at all times fully performed all of its conditions and obligations under the contract.

142. That the Defendant was and still remains in material breach of contract for failure to timely provide disengagement credits for eleven (11) unqualified "plaintiffs" within the five (5) to seven (7) days pursuant to the contract.

143. That the Defendant was afforded an opportunity to cure its material breach of contract but has not cured its material breach in total.

144. As a result of the Defendant's breach, the Plaintiff incurred damages and believes that the current amount is approximately one hundred thousand dollars ($100,000.00).

## THIRTEENTH CAUSE OF ACTION-BREACH OF IMPLIED DUTY OF GOOD FAITH, OKLAHOMA

145. The Plaintiff fully incorporates paragraphs 1-144 as if fully set forth herein.

146. Under Oklahoma law, a contract requires that each party act in good faith towards the other party and deal fairly with that party when performing the expressed terms of the contract.

147. In this case, the Plaintiff claims the Defendant had an obligation to use good faith when performing the following contractual term of screening prospective "plaintiffs" prior to retaining them on behalf of the Plaintiff.

148.     As to this term, the Plaintiff claims that the Defendant breached the contract's good faith obligation by failing to fully screen the prospective "plaintiffs" resulting in numerous "plaintiffs" having to be disengaged.

149.     That the Defendant's breach resulted in damages to the Plaintiff totaling approximately one hundred thousand dollars ($100,000.00).

## FOURTEENTH CAUSE OF ACTION-BREACH OF IMPLIED DUTY OF GOOD FAITH, OKLAHOMA

150.     The Plaintiff fully incorporates paragraphs 1-149 as if fully set forth herein.

151.     Under Oklahoma law, a contract requires that each party act in good faith towards the other party and deal fairly with that party when performing the expressed terms of the contract.

152.     In this case, the Plaintiff claims the Defendant had an obligation to use good faith when performing the following contractual term of returning funds of timely disengaged "plaintiffs" pursuant to the qualifying factors in the contract.

153.     As to this term, the Plaintiff claims that the Defendant breached the contract's good faith obligation by failing to timely credit charges to the Plaintiff's account when notified that a "plaintiff" was not qualifying pursuant to the contract.

154.     That the Defendant's breach resulted in damages to the Plaintiff totaling approximately one hundred thousand dollars ($100,000.00).

## FIFTEENTH CAUSE OF ACTION-BREACH OF IMPLIED DUTY OF GOOD FAITH, OKLAHOMA

155.     The Plaintiff fully incorporates paragraphs 1-154 as if fully set forth herein.

156.    Under Oklahoma law, a contract requires that each party act in good faith towards the other party and deal fairly with that party when performing the expressed terms of the contract.

157.    In this case, the Plaintiff claims the Defendant had an obligation to use good faith when performing the following contractual term of returning funds of marketing for, screening, qualifying, and signing up "plaintiffs" within the life of the contract.

158.    As to this term, the Plaintiff claims that the Defendant breached the contract's good faith obligation by failing to provide "plaintiffs" after receiving the Plaintiff's notice to not renew the contract on April 1, 2021.

159.    That the Defendant's breach resulted in damages to the Plaintiff totaling approximately one hundred thousand dollars ($100,000.00).

**SIXTEENTH CAUSE OF ACTION-FALSE REPRESENTATION, OKLAHOMA**

160.    The Plaintiff fully incorporates paragraphs 1-159 as if fully set forth herein.

161.    The Defendant made a material representation, by and through its agent Mr. Walker, that it could provide "150 to 200" qualifying "plaintiffs" per month within Wisconsin, Illinois, and Iowa. Likewise, the Defendant, by and through its agent Mr. Walker, also said to the Plaintiff that it would easily provide "100+" retainers [per month] with proper funding.

162.    That said representation was false, because during the three (3) month life of the subject contract the Plaintiff only received approximately one hundred forty-six (146) retainers but only forty-six (46) of these retainers qualified pursuant to the contract.

163.    The Defendant knew said representation was false or made as positive assertion recklessly, without any knowledge of its truth.

164. The Defendant made the representation with the intention that the Plaintiff enters into the contract upon the representation of qualifying retainer amounts, all to the Plaintiff's damage.

165. The Plaintiff believed such representation to be true and relied on it to its damage; and that said damages total approximately one hundred thousand dollars ($100,000.00).

## SEVENTEENTH CAUSE OF ACTION-FRAUD, OKLAHOMA

166. The Plaintiff fully incorporates paragraphs 1-165 as if fully set forth herein.

167. The Defendant made a representation of fact when the Defendant in attempting to advertise, market, and sell the "bulk marketing" services, made an express representation to the Plaintiff that it could provide "150 to 200" qualifying "plaintiffs" within Wisconsin, Illinois, and Iowa per month. Likewise, the Defendant, by and through its agent Mr. Walker, also said to the Plaintiff that it would easily provide "100+" per month retainers with proper funding.

168. That said representation was untrue, because during the three (3) month life of the subject contract the Plaintiff only received approximately one hundred forty-six (146) retainers but only forty-six (46) of these retainers qualified pursuant to the contract.

169. The Defendant, by its employee Mr. Walker, made the representation based on his personal knowledge, or was so situated that he necessarily ought to have known the untruth of the statement.

170. The Defendant had an economic interest in receiving several hundred thousands of dollars by the Plaintiff agreeing to Execute the contract.

171. The Plaintiff believed that the representation was true and justifiably relied on it all to the Plaintiff's damage; and that said damages total approximately one hundred thousand dollars ($100,000.00).

## EIGHTEENTH CAUSE OF ACTION-PUNITIVE DAMAGES, OKLAHOMA

172. The Plaintiff fully incorporates paragraphs 1-171 as if fully set forth herein.

173. The aforementioned acts by the Defendant are intentional wrongs; and that it has breached its duty imposed by the contract, and has unreasonably withheld services agreed upon.

174. The Defendant acted with intentional malice and/or reckless disregard of another's rights as the Defendant was aware, or did not care, that there was substantial and unnecessary risk that its conduct would cause serious injury to the Plaintiff.

175. The Plaintiff through its Attorneys, Hupy & Abraham, S.C., hereby makes a claim for punitive damages due to the Defendant's intentional malice and/or reckless disregard of another's rights.

## REQUEST FOR RELIEF

**WHEREFORE**, the Plaintiff requests that judgment be entered in favor of the Plaintiff and against the Defendant:

1. Compensatory damages to be determined at trial but no less than one hundred thousand dollars ($100,000.00);

2. Punitive damages for the intentional, willful, wanton and/or reckless acts of the Defendant;

3. Rescission of the contract due to the material misrepresentation by the Defendant's agent, Mr. Walker;

3. Awarding Plaintiff its costs and attorneys' fees; and

4. Awarding Plaintiff such other relief as the Court deems just and proper.

**DATED** at Milwaukee, Wisconsin, this 5th day of May, 2021.

HUPY AND ABRAHAM, S.C.
Attorneys for the Plaintiff,

By: _____

Todd R. Korb
State Bar Number: 1026950

111 East Kilbourn Avenue
Suite 1100
Milwaukee, Wisconsin 53202
TKorb@hupy.com
(414) 223-4800