**QUINTESSA**
BULK MARKETING AND FULL SERVICE PLATFORM
GENERAL TERMS OF SERVICE

This agreement is entered into as of ("the effective date"), between you, Hupy and Abraham S.C. ("you" or "your") and QUINTESSA LLC ("QUINTESSA") for the services ("services") described below.

### Details of Services Provided by Quintessa:

Beginning on the effective date, 1/12/2021 , QUINTESSA will begin to deliver Personal Injury leads to the Hupy and Abraham S.C..

QUINTESSA will provide pre-qualified leads to Hupy and Abraham S.C. . Leads will be signed on the retainer provided by the Attorney. Prompt lead delivery is provided via email, portal notification or live transfer. "Emailed only" and "Esign Pending" leads may be provided due to technology deficiencies and/or leads requesting to speak to an attorney prior to signing.

| Lead Tier | Description | Price | Territory |
|---|---|---|---|
| Tier 1 | Motor Vehicle Accident General Personal Injury | $1,600 per Claimant | Wisconsin, Illinois, Iowa |
| Tier 2 | Commercial Policy Injury | $4,500 per Claimant | |

### Terms and Cancellation:

Initial

 The Marketing Campaign is pre-funded with an initial trial period payment of $12,500. The initial trial period is for no more than 30 days. At day 31, the initial trial period will expire and the Extended Agreement will begin.

 Campaign minimum balance must remain 20% of funding. Once your balance reaches $5,000, you will be notified of additional funding requirements if you wish to continue your campaign.

 All funding by the Hupy and Abraham S.C. is non-refundable and may only be redeemed by means of pre-qualified leads. The Extended Agreement funding is set at $25,000 per month, and may be increased at the firm's discretion.

 The Hupy and Abraham S.C. will have seven full days (168 hours) to turn down or disengage the lead for approved reasons described below unless otherwise agreed upon in writing by Quintessa. On the seventh day, leads will not be considered for disengagement. Leads that are turned down or disengaged for the approved reasons described in this agreement will be credited back to your Campaign balance once Quintessa has verified and may be subject to internal audit which typically takes 5-7 business days.

#### Turndowns and Disengagements
 Approved reasons for turning down or disengaging a lead, unless otherwise agreed by Quintessa are as follows:
- Cited at fault
- Property Damage under $1,500 (unless totaled)
- No Insurance
- No medical treatment within 14 days of injury

 Return Caps. With reasonable cause, Quintessa may limit turndowns to 30% of all delivered MVA leads. Quintessa will not reduce this cap below 30%.

 **Leads that you turndown or disengage, must be done within seven days using the Quintessa portal in order to receive credit back to your campaign. Leads may no longer be pursued by the Hupy and Abraham S.C. or its referral firms once the lead has been disengaged. If contact continues, the lead will be charged.**

DocuSign Envelope ID: A12864DF-98C8-41F6-B3E2-EA1875E78528

Service Fee: Quintessa also provides call center intake services and reporting for your marketing campaign at a rate of 2% of all funding. Service fee is waived if payment is made via ACH or wire transfer.

No Direct Solicitation. Quintessa warrants that it does not directly solicit potential clients in pursuing personal injury leads. Quintessa is never the first to initiate contact with a potential client, but rather only responds to inquiries made by potential clients.

Entire Agreement. This Agreement contains the entire understanding of the parties and supersedes all prior agreements and understandings relating to the subject matter hereof. This Agreement shall not be amended except by a written instrument hereafter signed by each of the parties hereto. The parties further agree that even their "course of conduct" is insufficient to modify or alter the written Agreement.

Governing Law. The validity, construction, and interpretation of this Agreement shall be governed and enforced in accordance with the laws of the State of Oklahoma.

Arbitration. Except as otherwise provided below, in the event of any dispute, claim or controversy between or among the parties to this Agreement arising out of or relating to this Agreement or any breach thereof, including, without limitation, any claim that this Agreement or any of its parts is invalid, illegal or otherwise voidable or void, whether such dispute, claim or controversy sounds in contract, tort, equity or otherwise, and whether such dispute, claim or controversy relates to the meaning, interpretation, effect, validity, performance or enforcement of the Agreement, such dispute, claim or controversy shall be settled by and through an arbitration proceeding to be administered by the American Arbitration Association in Oklahoma City, Oklahoma, in accordance with the American Arbitration Association's Commercial Arbitration Rules. Each of the parties to this Agreement hereby agrees and consents to such venue and waives any objection thereto. The arbitrability of any such dispute, claim or controversy shall likewise be determined in such arbitration. Such arbitration proceeding shall be conducted in as expedited a manner as is then permitted by the commercial arbitration rules (formal or informal) of the American Arbitration Association. Both the foregoing agreement of the parties to this Agreement to arbitrate any and all such disputes, claims and controversies and the results, determinations, findings, judgments and/or awards rendered through any such arbitration shall be final and binding on the parties hereto and may be specifically enforced by legal proceedings. Notwithstanding the above, arbitration shall not be required for any claims brought by Quintessa as a result of Law Firm's non-payment of campaign balances.

Forum Selection. Any dispute arising in any way from this Agreement that is not subject to binding arbitration shall be subject to resolution exclusively in the State District Court of Oklahoma County, Oklahoma. Law Firm agrees to this venue as the exclusive venue and waives any defenses based on in personam jurisdiction.

Severability. If any provision of this Agreement is or becomes invalid, illegal, or unenforceable in any respect under any law, the validity, legality, and enforceability of the remaining provisions hereof shall not in any way be affected or impaired.

By Signing this Agreement, I understand and agree to the Services Provided and the Terms of this Agreement.

_____  
Signature

Printed Name

Lauren Mingee CEO & Owner  
Quintessa

DocuSigned by:  
*Jill Wellskopf*  
—5GC21CD84C4746B...—  
Signature

Jill Wellskopf  
Printed Name

Licensee  
Hupy and Abraham S.C.  
1/14/2021  
Date

# QUINTESSA
## BULK MARKETING AND FULL SERVICE PLATFORM
## GENERAL TERMS OF SERVICE

This agreement is entered into as of ("the effective date"), between you, __Hupy and Abraham S.C.__ ("you" or "your") and QUINTESSA LLC ("QUINTESSA") for the services ("services") described below.

### Details of Services Provided by Quintessa:

Beginning on the effective date, __2/3/2021__, QUINTESSA will begin to deliver ~~Personal Injury leads~~ *Signed retainers* to the __Hupy and Abraham S.C.__.

QUINTESSA will provide ~~pre-qualified leads~~ *Signed retainers* to __Hupy and Abraham S.C.__. Prompt ~~lead delivery~~ *retainer* is provided via email, portal notification or live transfer.

| Lead Tier | Description | Price | Territory |
|---|---|---|---|
| Tier 1 | Motor Vehicle Accident General Personal Injury | $1,600 per Claimant | Wisconsin, Illinois, Iowa |
| Tier 2 | Commercial Policy Injury | $4,500 per Claimant | |

### Terms and Cancellation:

Initial

*[CAK]* This Agreement is for a term of not less than 90 days and renews concurrently on day 90. If either party wishes to terminate the agreement, 30 day notice is required. After the written notice, QUINTESSA will continue to send leads until your campaign funding balance is zero.

*[CAK]* Campaign minimum balance must remain 20% of funding. Once your balance reaches $5,000, you will be notified of additional funding requirements if you wish to continue your campaign.

*[CAK]* All funding by the Hupy and Abraham S.C. is non-refundable and may only be redeemed by means of ~~pre-qualified leads~~ *Signed retainers*. The Agreement funding is set at $100,000 per month, and may be increased at the firm's discretion. Up to 20% of funding will be allocated to Commercial ~~leads~~ *Signed retainers*.

*signed retainer*

*[CAK]* The Hupy and Abraham S.C. will have seven full days (168 hours) to turn down or disengage the ~~lead~~ for approved reasons described below unless otherwise agreed upon in writing by Quintessa. On the seventh day, ~~leads~~ *Signed retainers* will not be considered for disengagement. ~~Leads~~ *Signed retainers* that are turned down or disengaged for the approved reasons described in this agreement will be credited back to your Campaign balance once Quintessa has verified and may be subject to internal audit which typically takes 5-7 business days.

#### Turndowns and Disengagements

*[CAK]* Approved reasons for turning down or disengaging a ~~lead~~ *signed retainer*, unless otherwise agreed by Quintessa are as follows:
- Cited at fault
- Property Damage under $1,500 (unless totaled)
- No Insurance
- No medical treatment within 14 days of injury
- No Injuries

*[CAK]* Return Caps. With reasonable cause, Quintessa may limit turndowns to 35% of all delivered MVA ~~leads~~ *retainers*. Quintessa will not reduce this cap below 35%.

*[CAK]* ~~Leads~~ *Signed retainers* that you turndown or disengage, must be done within seven days using the Quintessa portal in order to receive credit back to your campaign. Leads may no longer be pursued by the Hupy and Abraham S.C. or its referral firms once the lead has been disengaged. If contact continues, the lead will be charged.

*[CAK]* Service Fee: Quintessa also provides call center intake services and reporting for your marketing campaign at a rate of 2% of all funding. Service fee is waived if payment is made via ACH or wire transfer.

**EXHIBIT 2**

*CAL* **No Direct Solicitation.** Quintessa warrants that it does not directly solicit potential clients in pursuing personal injury leads. Quintessa is never the first to initiate contact with a potential client, but rather only responds to inquiries made by potential clients.

*CAL* **Entire Agreement.** This Agreement contains the entire understanding of the parties and supersedes all prior agreements and understandings relating to the subject matter hereof. This Agreement shall not be amended except by a written instrument hereafter signed by each of the parties hereto. The parties further agree that even their "course of conduct" is insufficient to modify or alter the written Agreement.

*CAL* **Governing Law.** The validity, construction, and interpretation of this Agreement shall be governed and enforced in accordance with the laws of the State of Oklahoma.

*CAL* **Arbitration.** Except as otherwise provided below, in the event of any dispute, claim or controversy between or among the parties to this Agreement arising out of or relating to this Agreement or any breach thereof, including, without limitation, any claim that this Agreement or any of its parts is invalid, illegal or otherwise voidable or void, whether such dispute, claim or controversy sounds in contract, tort, equity or otherwise, and whether such dispute, claim or controversy relates to the meaning, interpretation, effect, validity, performance or enforcement of the Agreement, such dispute, claim or controversy shall be settled by and through an arbitration proceeding to be administered by the American Arbitration Association in Oklahoma City, Oklahoma, in accordance with the American Arbitration Association's Commercial Arbitration Rules. Each of the parties to this Agreement hereby agrees and consents to such venue and waives any objection thereto. The arbitrability of any such dispute, claim or controversy shall likewise be determined in such arbitration. Such arbitration proceeding shall be conducted in as expedited a manner as is then permitted by the commercial arbitration rules (formal or informal) of the American Arbitration Association. Both the foregoing agreement of the parties to this Agreement to arbitrate any and all such disputes, claims and controversies and the results, determinations, findings, judgments and/or awards rendered through any such arbitration shall be final and binding on the parties hereto and may be specifically enforced by legal proceedings. Notwithstanding the above, arbitration shall not be required for any claims brought by Quintessa as a result of Law Firm's non-payment of campaign balances.

*CAL* **Forum Selection.** Any dispute arising in any way from this Agreement that is not subject to binding arbitration shall be subject to resolution exclusively in the State District Court of Oklahoma County, Oklahoma. Law Firm agrees to this venue as the exclusive venue and waives any defenses based on in personam jurisdiction.

*CAL* **Severability.** If any provision of this Agreement is or becomes invalid, illegal, or unenforceable in any respect under any law, the validity, legality, and enforceability of the remaining provisions hereof shall not in any way be affected or impaired.

By Signing this Agreement, I understand and agree to the Services Provided and the Terms of this Agreement.

_____  _____
Signature                   Signature

                            Chad Kreblin
_____  _____
Printed Name                Printed Name

Lauren Mingee CEO & Owner   Licensee
Quintessa                   Hupy and Abraham S.C.

                            2/3/21
                            _____
                            Date

# Hannah E. Dockendorff

**From:** Jason Abraham
**Sent:** Wednesday, May 5, 2021 7:40 AM
**To:** Chad Kreblin; Todd R. Korb; Hannah E. Dockendorff; Matt Locher
**Subject:** FW: Hupy and Abraham Balance


Jason Abraham
Vice President
Hupy and Abraham s.c.
(414) 223-4800
111 E Kilbourn Avenue, Suite 1100
Milwaukee, WI 53202

**From:** Jason Abraham <JAbraham@hupy.com>
**Sent:** Wednesday, May 5, 2021 7:39 AM
**To:** Lauren McNeil <lauren@quintessamarketing.com>; Jill Wellskopf <JWellskopf@hupy.com>
**Cc:** Jason Abraham <JAbraham@hupy.com>
**Subject:** RE: Hupy and Abraham Balance

Lauren

Thank you for your email. The contract we signed is silent as to refunds and as a result when the contract expired last night at 11:59 we were entitled to a refund for the amount of money you are holding that you did not fulfill. You had every opportunity to provide retainers and use up the balance during the last 30 days. The contract is also silent as to continuing after the 30 day notice period and therefore is over. If you do not immediately provide a refund you are doing exactly what you claim you don't want to do which is hold our money hostage. I believe that would be a mistake on your part based on the fact that your contract does not allow it and there is already an issue of the 27 cases we paid for that were never cases. Please let me know if you are going to keep this position. Thank you.

Jason

Jason Abraham
Vice President
Hupy and Abraham s.c.
(414) 223-4800
111 E Kilbourn Avenue, Suite 1100
Milwaukee, WI 53202

**From:** Lauren McNeil <lauren@quintessamarketing.com>
**Sent:** Wednesday, May 5, 2021 7:26 AM
**To:** Jill Wellskopf <JWellskopf@hupy.com>
**Cc:** Jason Abraham <JAbraham@hupy.com>
**Subject:** Re: Hupy and Abraham Balance

Jill,



1
Case 2:21-cv-00577-JPS    Filed 05/05/21    Page 5 of 6    Document 1-4

Also forgot to include. Your account should be at 0 by the end of this month. We don't want to hold any money hostage and have made all efforts to send cases, and I believe you have seen this. We appreciate your business, and will resolve the outstanding so we can both move forward in other marketing endeavors. Have a good Day Wednesday.

**Lauren V. Mingee**
Founder & CEO
Quintessa Marketing

M: 405-443-9756

"A New Brand of Legal Marketing"



On May 5, 2021, at 6:09 AM, Jill Wellskopf <JWellskopf@hupy.com> wrote:

Hi Lauren-

I just wanted to check in as our contracted expired as of last night.
Attached is a screenshot of the current billing portal.
We have a balance of $54,300 remaining as well as another $2900 in pending credits = $57,200.
Please immediately refund this balance to our American Express card.
I'd appreciate hearing from you as soon as possible.
Thanks much!

**Jill Wellskopf**
Director, Marketing

JWellskopf@hupy.com
(414) 223-4800
(414) 982-2059 Direct
(414) 271-3374 Fax

111 E Kilbourn Avenue, Suite 1100, Milwaukee, WI 53202

This message is intended solely for the intended recipient and any other access to or dissemination of this message is unauthorized. Any unauthorized reception does not waive any confidentiality or privilege of this message. The information in this email may be attorney/client communication and is therefore privileged. Anyone receiving an unauthorized message is under an obligation to destroy the message upon receipt and not copy or transmit the document to any other person in any way. The Electronic Communications Privacy Act of 1986 (18 USC 2510 et seq.) provides federal criminal and civil penalties for the unauthorized reading of this e-mail if you are not the intended recipient named above.
<Screenshot 2021-05-05 060645.jpg>