# IN THE UNITED STATES DISTRICT COURT FOR

# THE EASTERN DISTRICT OF WISCONSIN

HUPY & ABRAHAM, S.C.,

      Plaintiff,

v.                                    Case No: 2:21-CV-00577-JPS

QUINTESSA MARKETING, LLC,

      Defendant.

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

NOW COMES the Plaintiff, Hupy & Abraham, S.C., by and through its Attorney Todd R. Korb, and hereby files its Response to the Defendant's Motion to Dismiss, and states:

### BACKGROUND

On January 7, 2021, the Plaintiff entered into a trial contract (hereinafter "trial contract") with the Defendant for bulk marketing services to market for, screen, and sign-up potential "plaintiffs" involved in motor vehicle accidents in Wisconsin, Illinois, and Iowa. (*See* Pl.'s Compl., ¶ 5; Dec. of Mingee, Ex. A). This initial contract was a success.[1] (Pl.'s Compl., ¶ 8). Negotiations for a full marketing contract began on or around February 1, 2021, wherein the Plaintiff inquired as to the monthly rate of signed retainers the Defendant would deliver. (*Id.*, at ¶ 14). In response, the Defendant's agent, assured the Plaintiff that "150 to 200 [qualified retainers were] not out of the question." (Pl.'s Compl., ¶ 15; Dec. of Korb, Ex. B). Again on February 3, 2021, the Plaintiff inquired if the Defendant would be able to provide "3 to 4 [retainers]" per day

---

[1] However, as noted in Plaintiff's Complaint, as of the filing of the Complaint, the Plaintiff had withdrawn from representing approximately twenty-six of these retained "plaintiffs" as it was discovered they later did not meet one or more of the qualifications enumerated in the trial contract. *See* Pl.'s Compl., ¶ 8.

or 120 leads per month, and the Defendant held out it was capable of providing "100+ [signed retainers per month] with proper funding." (Pl.'s Compl., ¶¶ 16-17; Dec. of Korb, Ex. A). Following these negotiations, the parties entered into a second contract on February 3, 2021 (hereinafter the "Contract"). (*See* Pl.'s Compl., ¶ 18; Dec. of Mingee, Ex. B).

It quickly became apparent the Defendant was unable to meet the representations made during contract negotiations.[2] Because of this underwhelming performance, the Plaintiff gave the Defendant notice that it did not intend on renewing the Contract. (Pl.'s Compl., ¶¶ 43-44). After the Contract ended, the Plaintiff filed suit in Federal Court in the Eastern District of Wisconsin on May 5, 2021. (*See* Pl.'s Compl.).

## STANDARDS FOR REVIEW

Federal Rules for Civil Procedure (hereinafter "FRCP"), Rule 12(b) provides defenses that a party may assert in a responsive pleading. When a Rule 12(b)(3) motion to dismiss is joined with a Rule 12(b)(6) motion to dismiss, the court must first decide Rule 12(b)(3). *See Feinstein v. Wood, Hat & Silver, L.L.C.*, No. 10-C-00312, 2010 WL 3584002, at *3 (E.D. Wis. Sept. 9, 2010) (citation omitted)).

Rule 12(b)(3) allows a party to move to dismiss a case for improper venue. When ruling on a Rule 12(b)(3) motion, the court may consider facts outside the complaint. *Faulkenberg v. CB Tax Franchise Sys., LP,* 637 F.3d 801, 809-10 (7th Cir. 2011) (citation omitted). If the Court chooses to rely on pleadings and affidavits, the plaintiff need only make a prima facie showing of venue. *See Deb v. SIRVA, Inc.*, 832 F.3d 800, 809 (7th Cir. 2016) (citations omitted). When assessing whether there has been a prima facie showing, the court must view the facts in the light

---

[2] *See generally* Pl.'s Compl., ¶¶ 27-30 (showing that the Defendant never supplied the Plaintiff with more than 58 retainers per month for the life of the contract), ¶¶ 31-32 (describing how the Defendant failed to screen "plaintiffs" before signing them to the Plaintiff's contingency fee contract), ¶¶ 33-35 (the Defendant incorrectly charged the Plaintiff's pre-funded account for retained "plaintiffs"), ¶ 37 (the Defendant denied to honor a disengagement permitted by the contract's terms).

most favorable to the plaintiff unless directly contradicted by the defendant's affidavit(s) *Id.*, 832 F.3d at 809.

Rule 12(b)(6) allows a party to move to dismiss a case for failure to state a claim on which relief can be granted. To survive, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Wood v. Moss*, 134 S. Ct. 2056, 2067, 188 L. Ed. 2d 1039 (2014) (citations omitted). The pleading is viewed in the light most favorable to the pleader. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007) (citations omitted). Generally, Rule 12(b)(6) motions are looked on with disfavor by the courts, and are granted sparingly and with care. *See generally Armstrong v. Snyder*, 103 F.R.D. 96, 101 (E.D. Wis. 1984) (citations omitted).

## ARGUMENT

The Defendant moves this Court to dismiss this action under FRCP Rules 12(b)(3) and (6). (*See* Def.'s Memo. Of Law Supp. Mot. Dismiss). First, the Defendant asks the Court to enforce the allegedly valid forum selection clause in the Contract. (*Id.*). Alternatively, the Defendant asks the Court to enforce the allegedly enforceable arbitration clause. (*Id.*). Second, the Defendant without analysis asks for the Plaintiff's Emergency Motion for Preliminary Injunction to be denied. (*Id.*). As discussed below, the Defendant's arguments are meritless.

## I.   VENUE

### a.   The Contract's forum selection clause is not enforceable.

To determine the validity of a forum selection clause, the Court must look to the law that governs the dispute pursuant to the choice of law provision. *See IFC Credit Corp. v. United Bus. & Indus. Fed. Credit Union*, 512 F.3d 989, 991 (7th Cir. 2008). The parties disagree on whether Wisconsin or Oklahoma law governs this dispute. Regardless, the Plaintiff asserts that the Court

need not decide which law applies because the forum selection clause is invalid regardless of whether federal, Wisconsin, or Oklahoma law applies.

### i. Under federal law, the forum selection clause is unenforceable.

"Under federal law, a forum-selection clause is presumed to be valid—to overcome this presumption, the opposing party must show that the clause is 'unreasonable under the circumstances.'" *Ayyash v. Horizon Freight Sys., Inc.*, No. 15-CV-10296, 2018 WL 5994755, at *3 (N.D. Ill. Nov. 15, 2018) (citation omitted). Courts interpret this exception narrowly. *Id.* Courts will find a clause unreasonable if its incorporation "was the result of fraud, undue influence, or overwhelming bargaining power, if the selected forum is so gravely inconvenient that the opposing party will be deprived of its day in court, or if enforcement of the clause contravenes a strong public policy of the forum." *Id.*

Here, the Plaintiff asserts that it was fraudulently induced into entering the Contract's forum selection clause. As described above, the Defendant assured the Plaintiff during negotiations that it could produce "150 to 200" qualified retainers and later reiterated "100+" signed retainers per month. (*See* Pl.'s Compl., ¶¶ 15-17; Dec. of Korb, Ex. A-B). In actuality, the Plaintiff only received one hundred forty-six (146) "plaintiffs" from the Defendant; however only approximately forty-six (46) were qualifying "plaintiffs". (*See* Pl.'s Compl., ¶¶ 64-76).[3] Forty-six (46) "plaintiffs" clearly fall below the numbers quoted to the Plaintiff during the course of contract negotiations. Accordingly, the Plaintiff asserted claims of fraudulent misrepresentation made by the Defendant, which improperly induced the Plaintiff to enter into

---

[3] The Defendant incorrectly asserts that the Plaintiff received "over 100 personal injury clients from Quintessa". (*See* Def.'s Memo. Of Law Supp. Mot. Dismiss, p. 2). The Plaintiff received only one hundred forty-six (146) "plaintiffs" during the life of the contract, but only about a quarter of these "plaintiffs" actually qualified under the terms of the contract. (*See* Pl.'s Compl., ¶¶ 64-76).

the Contract.[4] Such misleading statements by the Defendant demonstrate unreasonableness under the circumstances, and therefore defeats the presumed validity for the subject clause.

Additionally, the forum of Oklahoma is gravely inconvenient to the Plaintiff. The distance from the Plaintiff's principal place of business, Milwaukee, Wisconsin, to Oklahoma City, Oklahoma, is approximately 870 miles. Such distance creates unreasonable travel expenses for Plaintiff's counsel to litigate all eighteen claims in Oklahoma—a location where the Plaintiff has no tangible connection.[5] Moreover, all one hundred forty-six (146) of the retained "plaintiffs" under the Contract reside only in Wisconsin, Illinois, and Iowa. (Pl.'s Compl. ¶ 63; Dec. of Mingee, Ex. B). Likewise, the Plaintiff's agents who participated in the Contract negotiations or management – agents that the Defendant may also call upon as witnesses to the subject litigation – are located in Wisconsin, Illinois, and Iowa. This would result in immense expenses for all parties to present witnesses in an Oklahoma court. Given these facts, this forum selection clause would effectively deprive the Plaintiff of its chance to efficiently litigate this matter in Oklahoma, demonstrating its unreasonableness under the circumstances, and therefore defeating the presumption of validity for the subject clause.

Lastly, enforcement of the subject clause contravenes a strong public interest of Wisconsin disfavoring enforcement of the forum selection clauses entered into under fraud or other deceptive practices. *See infra,* I.b. Therefore, strong public interests reject the enforcement of this clause. Accordingly, the forum selection clause lacks validity and the Court must find the clause is unenforceable under federal law.

---

[4] The Plaintiff has asserted a total of six claims against the Defendant alleging that the Defendant, by its agent, made misrepresentations that induced the Plaintiff into entering the Contract. (*See* Pl.'s Compl. ¶¶ 77-81, 111-123, 128-132, 160-171).

[5] Both contracts between the parties were drafted by the Defendant and at no point during the two contracts did the Plaintiff travel to Oklahoma for the purposes of negotiating or drafting these contracts. (Pl.'s Compl. ¶ 23). Likewise, at no point during these two contracts did the Plaintiff or its agents ever travel to Oklahoma. (*Id.*, at ¶ 63). Likewise, the Plaintiff never contracted the Defendant to retain any "plaintiffs" from Oklahoma, as the Plaintiff does not do business within Oklahoma. (*Id.*; *see also* Dec. of Mingee, Ex. B).

### ii.   Under Wisconsin law, the forum selection clause is unenforceable.

Wisconsin courts will enforce forum selection clauses "unless enforcement is shown to be unreasonable under the circumstances." *Arion, LLC v. LMLC Holdings, Inc.*, No. 18 C 5904, 2018 WL 6590533, at *3 (N.D. Ill. Dec. 14, 2018) (citations omitted). A forum selection clause will therefore "be enforced unless there is a quantum of procedural unconscionability plus a quantum of substantive unconscionability." *Warner v. St. John's Nw. Mil. Acad. Inc.*, No. 18-CV-730-JPS, 2019 WL 403718, at *4 (E.D. Wis. Jan. 31, 2019) (citation omitted).

Procedural unconscionability relates to factors bearing on the meeting of the minds of the contracting parties; substantive unconscionability pertains to the reasonableness of the contract terms themselves. *Leasefirst v. Hartford Rexall Drugs, Inc.*, 168 Wis. 2d 83, 89–90, 483 N.W.2d 585, 587–88 (Ct. App. 1992). The balance tips in favor of unconscionability when there is a certain quantum of procedural plus a certain quantum of substantive unconscionability. *Id.* The balancing of procedural and substantive unconscionability requires the court to consider a forum-selection clause on a case-by-case basis and precludes the development of a bright-line rule. *Pietroske, Inc. v. Globalcom, Inc.*, 2004 WI App 142, ¶ 6, 275 Wis. 2d 444, 685 N.W.2d 884 (footnote omitted). While the Defendant argues that there is no unconscionability, this is in fact baseless.

### 1.   There is procedural unconscionability.

To determine whether procedural unconscionability exists requires examining whether, during the formation of the contract, there was a "real and voluntary meeting of the minds" between the contracting parties. *Wisconsin Auto Title Loans, Inc. v. Jones*, 2006 WI 53, ¶ 34, 290 Wis. 2d 514, 714 N.W.2d 155 (citations omitted). The factors to be considered include, but are not limited to:

> age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, whether alterations in the printed terms would have been permitted by the drafting party, and whether there were alternative providers of the subject matter of the contract.

*Id.* (citations omitted). Several of these factors exist in the present case.

The first factor relevant to the instant case is the business acumen and experience of the parties. While the Defendant notes that the Plaintiff's agent, Chad Kreblin, is an experienced attorney, Attorney Kreblin's twenty years of experience consists largely of practicing personal injury law. (Dec. of Korb at ¶ 4). Attorney Kreblin does not purport to specialize in contract law or contract negotiation, standing in direct contrast with the Defendant's agent, Lauren Mingee. Ms. Mingee is the Founder and CEO of the Defendant.[6] (*Id.* at Ex. C). Ms. Mingee's daily responsibilities presumably consist of her drafting, reviewing, and signing similar contracts with law firms all across the country.[7] When invoking Attorney Kreblin's profession as evidence that the Plaintiff was properly positioned to agree to the terms of the Contract (Def.'s Mem. of Law Supp. Mot. Dismiss, p. 11), the Defendant fails to acknowledge the unique experience and education that it's agent has relative to Attorney Kreblin. Accordingly, the Defendant's invocation bears no relevance to whether there was a voluntary meeting of the minds given the differing experience in contract negotiations between the parties' agents.

The second relevant factor is the relative bargaining power of the parties. Evidence of gross inequality of bargaining power combined with terms unreasonably favorable to the stronger party may show that the weaker party did not possess a "meaningful choice." *See Coady v. Cross Country Bank*, 2007 WI App 26, ¶ 39, 299 Wis. 2d 420, 729 N.W.2d 732 (citations

---

[6] In the Contract, Ms. Mingee is identified also as "CEO & Owner". (Dec. of Mingee, Ex. B).
[7] A bulk marketing agreement between the Defendant and another personal injury law firm in Missouri signed this year indicates that Ms. Mingee was the main signatory for these service contracts for the Defendant. (Dec. of Korb, Ex. E).

omitted). Such inequality exists here. The success of the trial contract gave the Defendant leverage over the Plaintiff during negotiations for the Contract, as the Plaintiff had a "successful" preliminary experience with the Defendant and therefore was incentivized to enter in to another contract with a company that had proved its quality of service. When the Defendant's trial performance was combined with its—later proven to be false—promise of "100+" or "150 to 200" qualified retainers per month during negotiations (*See* Pl.'s Compl., ¶¶ 15-17; Dec. of Korb, Ex. A-B), it is evident that the Plaintiff lacked meaningful, alternative means to obtain the services offered on a more favorable basis from a different company that did not include a forum selection clause. Moreover, if these representations were in fact a deliberate misrepresentation[8] in order to solicit the Plaintiff into signing the Contract, it only further serves to show the gross inequity in bargaining power during negotiations.

Accordingly, the forum selection provision is procedurally unconscionable, because there is heavily imbalanced bargaining power between the parties and one-sided provisions that collectively demonstrate there was no real and voluntary meeting of the minds. Therefore, the Court must find there is no enforceable forum selection clause.

### 2. There is substantive unconscionability.

Generally, substantive unconscionability addresses the fairness and reasonableness of the contract provision subject to challenge. *See Wisconsin Auto Title Loans, Inc. v. Jones*, 2006 WI 53, ¶ 35, 290 Wis. 2d 514, 714 N.W.2d 155. More specifically, substantive unconscionability refers to whether the terms of a contract are unreasonably favorable to the more powerful party. *Id.* at ¶ 36 (citation omitted). The analysis of substantive unconscionability requires the Court to look at the contract terms and determine whether the terms are "commercially reasonable"—that is, whether the terms lie outside the limits of what is reasonable or acceptable. *Id.* (citations

---

[8] *See supra* Footnote 4.

omitted). Often this is found when a party has unduly restricted another party's remedies or unduly expanded its own remedial rights. *Id.* at ¶ 60. Wisconsin courts determine whether a contract provision is substantively unconscionable on a case-by-case basis. *Id.* at ¶ 35 (citations omitted).

Here, the Contract's forum selection clause broadly states that "[a]ny dispute arising in any way from this Agreement that is not subject to binding arbitration shall be subject to resolution exclusively in the State District Court of Oklahoma County, Oklahoma." (Dec. Mingee, Ex. B).[9] If the Court finds the arbitration clause is unconscionable, then this would effectively require all disputes related to this Agreement, no matter how tangentially related, to be bound to this overly broad forum clause. This term is not commercially reasonable, for as previously discussed the Plaintiff and its "plaintiffs" have no meaningful connections to Oklahoma. *See supra* I.a.i (discussing the Plaintiff's lack of connection to Oklahoma). This case is distinguishable from *First Federal Financial Service, Inc. v. Derrington's Chevron, Inc.,* 230 Wis. 2d 553, 556, 602 N.W.2d 144 (Ct. App. 1999), where the buyer and seller were both located in California and a third party financing company was headquartered in Wisconsin. Likewise, the Contract's forum selection clause also requires the Plaintiff to "[waive] any defenses based on in personam jurisdiction." (Dec. Mingee, Ex. B). This term alone demonstrates unreasonable favoritism of the Defendant, as it effectively strips the Plaintiff of its ability to raise defenses from any claims by the Defendant.

Taken together, these numerous factors collectively demonstrate that the forum selection provision is substantively unconscionable. As the forum selection provision is both procedurally and substantively unconscionable, the Court must deny the Defendant's Motion to Dismiss, because said clause is invalid under Wisconsin law.

---

[9] The unconscionability of the arbitration clause is discussed in Section II. *See infra* II.

### iii. Under Oklahoma law, the forum selection clause is unenforceable.

Similar to the federal analysis, a forum-selection clause obtained by fraud is voidable. *Tucker v. Cochran Firm-Crim. Def. Birmingham L.L.C.*, 2014 OK 112, ¶ 34, 341 P.3d 673, 687; *see also First Nat'l Bank in Durant v. Honey Creek Entertainment Corp.,* 2002 OK 11, ¶ 12, 54 P.3d 100, 104 ("Fraud vitiates everything it touches, and a contract obtained thereby is voidable. And evidence is always admissible to show that contracts have been fraudulently obtained.").

As previously discussed in subsection I.a.i.1, the Plaintiff asserts that it was fraudulently induced into entering the Contract, including the forum selection clause. *See supra* I.a.i.1. Accordingly, the Plaintiff asserted claims pertaining to the fraudulently misrepresentation made by the Defendant, which improperly induced the Plaintiff to agree to the forum selection clause. Such evidence of fraud makes the subject forum selection clause voidable under Oklahoma law. In conclusion, the subject forum selection clause is not enforceable under federal, Wisconsin, and Oklahoma law; therefore, the Defendant's Motion must be denied.

### b. As the forum selection clause is unenforceable, Wisconsin is the proper venue under *forum non conveniens*.

An analysis of *forum non conveniens* generally includes two parts. First, an adequate alternative forum must be available to hear the case. *Fischer v. Magyar Allamvasutak Zrt.*, 777 F.3d 847, 867 (7th Cir. 2015) (holding that to satisfy the adequate alternative step, a forum must be both available and adequate). "An alternative forum is available if all parties are amenable to process and are within the forum's jurisdiction." *Id.* (quotations omitted). A forum is adequate if no parties will be treated unfairly or deprived of all remedies. *Id.* If this first part is met, the court then must weigh the private interests of the litigants with the public interests of the forum to determine whether a transfer would serve the convenience of the parties and witnesses and otherwise promote the interest of justice. *Kamel v. Hill-Rom Co., Inc.*, 108 F.3d 799, 802 (7th

Cir. 1997). "The private interest factors include the relative ease of access to sources of proof, availability of compulsory process for attendance of unwilling witnesses, the cost of obtaining such attendance, the possibility of viewing relevant premises, and 'all other practical problems that make a trial easy, expeditious and inexpensive.'" *Ayyash v. Horizon Freight Sys., Inc.*, No. 15-CV-10296, 2018 WL 5994755, at *2 (N.D. Ill. Nov. 15, 2018) *(*citing *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 62 n.6 (2013)). Public interest factors include "the administrative difficulties flowing from court congestion, local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Atl. Marine*, 571 U.S. 62 n.6. Courts also give some weight to the plaintiff's choice of forum. *Id.*; *see also Zelinski v. Columbia 300, Inc.*, 335 F.3d 633, 643 (7th Cir. 2003) (holding deference for plaintiff is greater when suing in home forum).

First, Wisconsin is an adequate forum. There is no dispute that Wisconsin is available. While the Defendant favors forum in Oklahoma, the Defendant has not asserted any difficulties in appearing before this Court. Moreover, the Defendant has done business within the Court's jurisdiction: soliciting law firms to become clients and soliciting "plaintiffs" for law firms within the state of Wisconsin. (*See generally* Dec. of Mingee, Ex. A, B). By comparison, the Plaintiff does not conduct business in Oklahoma. *See supra* I.a.i (discussing the Plaintiff's lack of link to Oklahoma). Therefore, the necessary parties to this action are within Wisconsin's jurisdiction. Moreover, there is no dispute that Wisconsin is adequate. There are no allegations on the record that the parties would somehow be treated unfairly or deprived of all remedies within this Court's jurisdiction. By comparison, the Plaintiff previously asserted that it would be deprived of meaningfully presentation of its claims in Oklahoma. *See supra* I.a.i. In contrast, the Defendant has not asserted similar logistical problems in defending itself in Wisconsin, because there are

none. In light of the foregoing facts, the first part of the *forum non conveniens* analysis is satisfied in favor of Wisconsin.

Regarding the second part of the analysis, there are a number of factors that favor Wisconsin as the proper forum. First, the relative ease of access to sources of proof. As previously discussed, the Plaintiff's witnesses largely reside within Wisconsin, Illinois, and Iowa, making it easier for all parties to access these sources of proof in Wisconsin as compared to Oklahoma. *See supra* I.a.i. By extension, these facts also favor Wisconsin regarding the availability of compulsory process for attendance of unwilling witnesses as the Plaintiff's agents, "plaintiffs", and other witnesses largely reside within Wisconsin, Illinois, and Iowa. *See supra* I.a.i. These facts further implicate another factor: the cost of obtaining such attendance. As noted previously, the distance from the Plaintiff's principal place of business, Milwaukee, Wisconsin, to Oklahoma City, Oklahoma, is approximately 870 miles. *See supra* I.a.i. Such distance puts a burden upon all parties of increased expenses to present evidence and witnesses in Oklahoma as compared to Wisconsin. *See supra* I.a.i. Collectively, these private factors demonstrate the ease and convenience of litigating the subject case within the forum of Wisconsin.

Likewise, Wisconsin is the favored forum when taking into account the public interest factors. Wisconsin has interest in having localized controversies decided within Wisconsin. In this case, the Plaintiff is headquartered in Wisconsin. (Pl.'s Compl., ¶ 3), and the "plaintiffs" retained by the Defendants are contractually required to be located in Wisconsin, Illinois, and Iowa. (Dec. Mingee, Ex. B). Moreover, the Plaintiff and its agents never went to Oklahoma to draft or effectuate the contracts, showing that this is clearly a localized controversy. (Pl.'s Compl. ¶¶ 23, 63). Furthermore, as Wisconsin has more significant contacts with the subject lawsuit, it is worth noting that Wisconsin has an interest in protecting the consumers within its

jurisdiction from deceptive business practices. For well over a century, Wisconsin has put forth legislation protecting consumers from deceptive trade practices. *See* 1913 Wis. Laws, ch. 510 (acting as the precursor to what is known today as the Deceptive Trade Practices Act set forth in Wis. Stat. § 100.18). Presently, Wis. Stat. § 100.18, entitled "Fraudulent representations" is a multi-section statute "intended to protect the residents of Wisconsin from any untrue, deceptive or misleading representations made to promote the sale of a product." *State v. Automatic Merch. of Am. Inc.,* 64 Wis. 2d 659, 663, 221 N.W.2d 683 (1974). It is "broad in scope, affecting numerous entities, products, services, and means of communication." *Tietsworth v. Harley-Davidson Inc.*, 2004 WI 32, ¶ 81, 270 Wis. 2d 146, 677 N.W.2d 233. It "was enacted to address the shortcomings of common law protections for consumers" and to protect against both obvious and implied deception. Cullen Goretzke, *The Resurgence of Caveat Emptor: Puffery Undermines the Pro-Consumer Trend in Wisconsin's Misrepresentation Doctrine,* 2003 Wis. L. Rev. 171, 222; *see also Tim Torres Enters. Inc. v. Linscott*, 142 Wis. 2d 56, 72, 416 N.W.2d 670 (Ct. App. 1987) (holding Wis. Stat. § 100.18's general purpose "is to prevent certain activities deemed harmful to citizens' economic and social well-being," even though the damages from such illegal activities may not be easy to quantify). Since its inception, Wisconsin courts and legislatures have expanded upon this policy by providing private causes of action and expanding contexts. *See generally* Wis. Stat. § 100.18(2)(a) (prohibiting deceptive pricing); Wis. Stat. § 100.18(11)(b)2. (providing for a private cause of action). In light of these legislative efforts, Wisconsin clearly has an interest in protecting its residential consumers from poor business practices, especially adjudicating clams of fraud like those the Plaintiff's Complaint. (*See generally* Pl.'s Compl.). These aforementioned public interests are given even stronger weight

when viewed under the understanding that this Court is required to give weight to the Plaintiff's choice of forum under *Atl. Marine*, 571 U.S. 62 n.6.

It is also important to note, that there is generally a public interest in having the trial of a diversity case in a forum that is at home with the law. *See Atl. Marine*, 571 U.S. 62 n.6. Obviously, a Wisconsin court would be familiar with applying Wisconsin law. However, federal courts are qualified to apply various states' laws. *See generally Emps. Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1169–70 (10th Cir. 2010) (citation omitted). There is no reason to find that the Eastern District of Wisconsin would be unable to apply the correct law to Plaintiff's claims, regardless of whether Wisconsin or Oklahoma law be applied. Moreover, questions of local law carry little weight when it comes to adjudicating familiar common-law claims, such as breach of contract. *See generally Presidential Hosp., LLC v. Wyndham Hotel Grp.,* LLC, 333 F. Supp. 3d 1179, 1235 (D.N.M. 2018). In fact, in another lawsuit involving the Defendant and another personal injury firm, a United State District Judge in Oklahoma, permitted the contractual dispute to be transferred to the Eastern District of Missouri in the interest of justice. (Dec. of Korb, Ex. D). Therefore, the Defendant's assertion that there are no availing public policy interests is entirely meritless.

As both parts of the *forum non conveniens* analysis are satisfied, the Court shall find that a transfer to Oklahoma would be inconvenient for all parties and not in the interest of justice. Additionally, even if the Court finds that there is an unenforceable forum selection clause, the Plaintiff's choice of forum persists. The Court must therefore deny the Defendant's Motion to Dismiss due to improper forum.

        **c. Even if the forum selection clause is valid, Wisconsin is still the proper venue under *forum non conveniens*.**

As discussed previously, *forum non conveniens* generally requires a two-part analysis, *See supra* I.b, which changes when the agreement contains a valid forum selection clause. *Warwick v. Schneider Nat'l, Inc.*, No. 20 C 1995, 2020 WL 5891407, at *2 (N.D. Ill. Oct. 5, 2020). If a **valid** forum selection clause governs the dispute, the clause should be "given controlling weight in all but the most exceptional cases" and the court "should not consider arguments about the parties' private interests." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 63–64 (2013). "[T]he plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted" and "forum-selection clauses should control except in unusual cases." *Id.*

As discussed in great length previously, Wisconsin is the favored forum when taking into account the public interest factors under the *forum non conveniens* test. *See supra* I.b. Therefore, the Defendant's assertion that there are no availing public policy interests is entirely meritless. Even if the Court finds that there is a valid forum selection clause, the Plaintiff's choice of forum would still survive the *forum non conveniens* analysis. For this reason, the Court must deny the Defendant's Motion to Dismiss due to improper forum.

## II. ARBITRATION

### a. The Arbitration Clause is Unenforceable.

Contrary to the Defendant's claims, the arbitration clause in the Contract is unconscionable under Wisconsin law and is therefore unenforceable. The Federal Arbitration Act (hereinafter "FAA") provides that a written provision for arbitration "in any maritime transaction or a contract evidencing a transaction involving commerce…shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2018). As the FAA "places arbitration agreements on an equal footing

with other contracts," *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010), such agreements may be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). Although challenges to the validity of a contract as a whole must be made in arbitration if the agreement so requires, challenges to the validity of the arbitration provision itself may be raised in court. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 448–49 (2006). This Court therefore has the authority to determine the validity of the Contract's arbitration clause even though the clause itself states that the issue of arbitrabilty shall be determined by the arbitrator. (Dec. of Mingee, Ex. B). Although the parties dispute the governing law*, see supra* I.a, the Court has not been asked to decide which law governs this matter. Regardless whether federal, Wisconsin, or Oklahoma law applies, the Court will find the subject arbitration clause unenforceable.

Similar to Federal law, Wisconsin law has determined that an arbitration provision may be "invalid for reasons that apply to all contract provisions." *Wisconsin Auto Title Loans, Inc. v. Jones*, 2006 WI 53, ¶ 28, 290 Wis. 2d 514, 714 N.W.2d 155 (citations omitted). An arbitration clause in a contract may therefore be held to be invalid if it is unconscionable. *Id.* ¶ 29 (citations omitted). Though unconscionability lacks a precise definition, it has often been described as "the absence of meaningful choice on the part of one of the parties, together with contract terms that are unreasonably favorable to the other party." *Id.* ¶ 32 (citations omitted).[10] As will be outlined

---

[10] Oklahoma law mirrors this language in its definition of unconscionability. The Oklahoma Supreme Court states that:

> The basic test of unconscionability of a contract is whether under the circumstances existing at the time of making of the contract, and in light of the general commercial background and commercial need of a particular case, clauses are so one-sided as to oppress or unfairly surprise one of the parties. Unconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties, together with contractual terms which are unreasonably favorable to the other party.

*Bilbrey v. Cingular Wireless, L.L.C.*, 2007 OK 54, ¶ 19, 164 P.3d 131, 136 (quoting *Barnes v. Helfenbein*, 1976 OK 33, ¶ 23, 548 P.2d 1014, 1020).

in the sections below, the arbitration clause present in the Contract is both procedurally and substantively unconscionable. *See supra* I.a.ii. As such, the provision is unenforceable and the Defendant's request to enforce the arbitration clause and dismiss this action with prejudice in favor of arbitration should be denied.

### i. The Arbitration Clause is Procedurally Unconscionable.

The law providing guidance for finding procedural unconscionability was discussed at length in Subsection I.a.ii.1. *See supra* I.a.ii.1.

Again several of the factors used in evaluating procedural unconscionability concern the arbitration clause, the first of which is the education and business acumen and experience of the parties. As discussed previously, the Defendant's invocation of Attorney Kreblin's professional experience bears no relevance to whether there was a voluntary meeting of the minds given the gulf of experience in contract negotiations, especially as it relates to the arbitration clause. *See supra* I.a.ii.1. Similarly, the bargaining power of the parties is also relevant. As enumerated previously, the success of the trial contract gave the Defendant leverage over the Plaintiff in negotiations for the Contract as it incentivized the Plaintiff to sign the Contract and agree to the subject arbitration clause, rather than start from scratch and seek out the services of a different company whose quality was unknown. *See supra* I.a.ii.1. Just as with the forum selection clause, it is evident that the Plaintiff lacked meaningful, alternative means to obtain the services offered on a more favorable basis from a different company that did not include an arbitration clause which would require it to arbitrate all contractual and related claims approximately 870 miles away from its place of business. *See Coady v. Cross Country Bank*, 2007 WI App 26, ¶ 38, 299 Wis. 2d 420, 729 N.W.2d 732. Moreover, if this promise was in fact a deliberate misrepresentation in order to solicit the Plaintiff into signing a contract with the Defendant as the

Plaintiff alleges in its Complaint, it only further serves to show the gross inequity in bargaining power during negotiations as it relates to the arbitration clause, as only one party would be aware that it was not possible for the contract to be fulfilled.

Accordingly, the arbitration clause in the Contract is procedurally unconscionable as there is heavily imbalanced bargaining power between the parties and one-sided provisions that collectively demonstrate there was no real and voluntary meeting of the minds as it relates to the arbitration clause.

### ii. The Arbitration Clause is Substantively Unconscionable.

As stated above, substantive unconscionability addresses the fairness and reasonableness of the contract provision at issue and requires the court to look at the contractual terms and determine whether those terms are "commercially reasonable." *See supra* Ia.ii.2. For example, courts have found substantive unconscionability when one party has unduly restricted the remedies available to the other party relative to the remedies available to the first party. *Wisconsin Auto Title Loans, Inc. v. Jones*, 2006 WI 53, ¶ 60, 290 Wis. 2d 514, 714 N.W.2d 155. This was the case in *Wisconsin Auto Title Loans*, where the binding arbitration provision in a loan contract required the borrower to submit all disputes and claims to arbitrations, but not the creditor. *Id.* ¶¶ 61–65.

The arbitration clause in the present case mirrors the arbitration clause in *Wisconsin Auto Title Loans.* The arbitration clause in the Contract states that:

> Except as otherwise provided below, in the event of any dispute claim or controversy between or among the parties to this Agreement arising out of or relating to this Agreement or any breach thereof…shall be settled by and through an arbitration proceeding to be administered by the American Arbitration Association in Oklahoma City, Oklahoma, in accordance with the American Arbitration Association's Commercial Arbitration Rules.

(Dec. of Mingee, Ex. B) However, the arbitration clause possessed an exception which states that "[n]otwithstanding the above, arbitration shall not be required for any claims brought by [the Defendant] as a result of [the Plaintiff's] non-payment of campaign balances." (*Id.*) This directly demonstrates the unconscionability of the arbitration clause, which strongly favors the Defendant by exempting itself from its own broad arbitration rules, as was the case with the creditor in *Wisconsin Auto Title Loans. See Wisconsin Auto Title Loans*, 290 Wis. 2d at ¶ 61–65.

In addition, the American Arbitration Association's ("AAA") Consumer Due Process Protocol Statement of Principles, Principle 7 requires that "the proceedings should be conducted at a location which is reasonably convenient to both parties with due consideration of their ability to travel and other pertinent circumstances." (Dec. of Korb, Ex. F). As the Plaintiff is based in Milwaukee, Wisconsin, approximately 870 miles away from Oklahoma City, Oklahoma, forcing the Plaintiff to participate in an arbitration so far away from its home office is unreasonable and in in direct contravention to the AAA's protocols, further showing the unconscionability of the arbitration clause.

When taken as a whole, these numerous factors demonstrate that the arbitration clause is substantively unconscionable. The terms of the subject arbitration clause unfairly restrict the remedies available to the Plaintiff while expanding the Defendant's rights relative to those of the former. Because the arbitration clause is both procedurally and substantively unconscionable, the Court must deny the Defendant's Motion's request to enforce the arbitration clause.

### b. A Stay of Action Is Required Should the Court find Arbitration Applies.

The Defense asserts that dismissal of the current action with prejudice is warranted in order to advance arbitration. (Def.'s Memo. Of Law Supp. Mot. Dismiss, p. 12–14). This remedy is contrary to both Wisconsin and Oklahoma law. Under Wis. Stat. § 788.02, "[i]f any suit . . . be

brought upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit . . . is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." Likewise, under 12 OK Stat. § 12-1858(G), "[i]f the court orders arbitration, the court on just terms shall stay any judicial proceeding that involves a claim subject to the arbitration. If a claim subject to the arbitration is severable, the court may limit the stay to that claim." Pursuant to both these statutes, the Plaintiff petitions the Court to not dismiss the subject suit should the Court find the arbitration clause is enforceable. Therefore, the Defendant's request to dismiss the subject action in favor of arbitration is meritless.

## III.     THE PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

The Defendant requests that the Court deny the Plaintiff's unbriefed Motion for Injunctive Relief. (Def.'s Mem. of Law Supp. Mot. Dismiss, p. 14.) However, the Defendant offers no analysis to substantiate this request. More critically, the Defendant ignores the fact that this Court itself required the parties to conduct discovery and agree upon a statement of facts before it set a hearing date for the injunction. (*See generally* Aff. Dockendorff). Discovery has yet to be conducted on this matter. Therefore, the lack of further supplemental briefing is in compliance with guidance from this Court, rather than through a dereliction of duty. Likewise, the Plaintiff also submitted with said motion, an Affidavit supporting the Plaintiff's position, (*see generally* Aff. Abraham); therefore, the Defendant's contentions that the Motion was without supporting documentation is untrue. Accordingly, the Court should deny the Defendant's request to dismiss the Motion for Preliminary Injunction.

## CONCLUSION

In conclusion, the Defendant failed to substantiate its arguments that the suit must be dismissed due to improper action, or alternatively for failure to state a claim. There is an unenforceable forum selection clause, and equally unenforceable arbitration provision. Lastly, the Defendant baselessly asks for the denial of the Plaintiff's injunctive motion. Accordingly, the Court must deny the Defendant's Motion to Dismiss.

**DATED** at Milwaukee, Wisconsin, this 29th day of June, 2021.

HUPY AND ABRAHAM, S.C.
Attorneys for the Plaintiff,


By: _/s/ Todd R. Korb_____
    Todd R. Korb
    State Bar Number: 1026950
    Hupy & Abraham, S.C.
    111 East Kilbourn Avenue
    Suite 1100
    Milwaukee, Wisconsin 53202
    TKorb@hupy.com
    (414) 223-4800
    (414) 271-3374