UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

HUPY & ABRAHAM, S.C.

                        Plaintiff,

                                          Case No. 2:21-cv-00577-JPS

        v.

QUINTESSA MARKETING, LLC,

                        Defendant.

## QUINTESSA MARKETING, LLC'S
## REPLY MEMORANDUM OF LAW SUPPORTING MOTION TO DISMISS

Defendant Quintessa Marketing, LLC ("Quintessa") submits this Reply Memorandum of Law supporting its Motion to Dismiss under Fed. R. Civ. P. 12(b)(3) and (6).

## INTRODUCTION

Quintessa filed a Motion to Dismiss asking the Court to enforce a **Forum Selection** clause in the parties' Marketing Contract, which identifies Oklahoma County, Oklahoma as the parties' agreed-upon forum for litigating non-arbitrable disputes. (Doc. 10-2 p. 1). Alternatively, Quintessa asks the Court to enforce a mandatory **Arbitration** clause in that same contract, which requires Plaintiff Hupy & Abraham, S.C. ("Hupy") to arbitrate its claims before the American Arbitration Association. (*Id.*).

Hupy, in its response, didn't allege that the clauses were ambiguous or hard to understand. Instead, Hupy tries to avoid the clauses by claiming unconscionability and fraud.

Specifically, Hupy claims the **Forum Selection** clause and **Arbitration** clause are unconscionable under Wisconsin law. However, Hupy can prove neither procedural or substantive unconscionability. The record demonstrates that Hupy is a sophisticated law firm that had the ability to review and modify the Marketing Contract before executing it and that the

clauses at issue are not unreasonable. Hupy definitely had the capacity to negotiate and comprehend the Marketing Contract considering it is self-litigating this complex claim based on the same contract.

Hupy also seeks to avoid the **Forum Selection** clause by claiming that Quintessa committed fraud while negotiating the Marketing Contract—despite that Hupy did not assert a cause of action for fraud. Hupy, though, failed to allege or present any evidence in its response brief supporting that Quintessa's alleged fraud "relates ***to the forum selection clause itself*** as opposed to the contract as a whole." *Rawdon v. Starwood Cap. Grp.*, 2019 OK CIV APP 70, ¶ 22, 453 P.3d 516 (quoting *Tucker v. Chochran Firm-Criminal Defense Birmingham L.L.C.*, 2014 OK 112, 33, 341 P.3d 673) (emphasis in original). Hupy generally asserts that Quintessa misrepresented other contract terms (including quantity of clients), but not that Quintessa fraudulently induced Hupy to agree to litigate claims in Oklahoma. The difference is important because the **Forum Selection** clause, untouched by fraud, is separable and enforceable.

As discussed in Quintessa's opening memorandum and this reply, the **Forum Selection** clause is valid and enforceable and requires litigation of any non-arbitrable dispute in Oklahoma. Even if the **Forum Selection** clause is improper, the **Arbitration** clause still mandates Hupy to arbitrate its claims before the AAA. Dismissal of this action (and denial as moot of Hupy's pending injunction motion) is warranted.

## REPLY ARGUMENT

### I. The Forum Selection clause is valid & enforceable and requires litigation of any non-arbitrable dispute in Oklahoma County, Oklahoma

Hupy does not challenge the language or substance of the **Forum Selection** clause or contend that it is ambiguous in any way, thus conceding that the clause (on its face) requires Hupy to litigate any non-arbitrable dispute in Oklahoma state court.

Hupy, rather, seeks to avoid application of the **Forum Selection** clause by claiming that the contract is unconscionable and that Quintessa committed fraud when negotiating the Marketing Contract. Neither argument is supported in the slightest.

### A. The Forum Selection Clause is not unconscionable under Wisconsin or Oklahoma law

Hupy seeks to avoid the **Forum Selection** clause on grounds that it is unconscionable and, therefore, unenforceable as a matter of law. (Doc. 14 p. 17, 21). Hupy, for unknown reasons, invokes Wisconsin law on this issue despite the Marketing Contract containing a valid choice of law provision requiring application of Oklahoma law to questions of contract interpretation and validity. (Doc. 10-2 p. 2).

Nonetheless, Wisconsin and Oklahoma have similar tests for unconscionability. Wisconsin requires the existence of procedural and substantive unconscionability, *Pietroske, Inc. v. Globalcom, Inc.*, 2004 WI App 142, ¶ 1, 275 Wis. 2d 444, 685 N.W.2d 884, and Oklahoma, similarly, considers a contract unconscionable if there exists an "absence of meaningful choice" and "unreasonably favorable" contract terms, *Barnes v. Helfenbein*, 548 P.2d 1014, 1020 (OK 1976). Oklahoma law, however, is more stringent in that it "directly relate[s]" unconscionability with "fraud or deceit." *Id.*

Regardless which states' standard applies, Hupy doesn't come close to establishing unconscionability concerning the **Forum Selection** clause.

**1.     The Forum Selection clause is not unconscionable under Wisconsin law**

        **a)     There is zero evidence suggesting procedural unconscionability; Hupy is a sophisticated law firm that diligently reviewed and accepted the terms of the Marketing Contract**

Hupy has no legitimate argument as to procedural unconscionability under Wisconsin law. It asserts that Chad Kreblin, the shareholder with 20 years of legal experience who executed the Marketing Contract on Hupy's behalf, lacked the "education and business acumen and experience" to effectively negotiate with Quintessa and enter into a fair agreement. (Doc. 14 p. 7, 17). To Hupy, Kreblin was well beyond his skill set to review and agree to the two-page Marketing Contract because he's a personal injury lawyer who doesn't handle contract claims. Little response is needed to defeat this position.

Hupy has presented zero evidence that Attorney Kreblin or his firm was disadvantaged or lacked the ability to negotiate this contract on fair terms. Kreblin's legal background is of little consequence here—Hupy has not alleged (let alone presented evidence to support) that the Marketing Contract was too complex or burdensome for a mere personal injury attorney to review and understand. The contract is **two pages** in length and contains easy-to-understand language. Hupy doesn't even claim the contract is ambiguous or difficult to interpret; in fact, it operated under an identical contract without issue for months before executing the Marketing Contract. A non-attorney could easily comprehend and agree to the Marketing Contract's terms.

The mere format of the Marketing Contract goes against Hupy's procedural unconscionability position. Nothing about the Marketing Contract suggests that Quintessa hid meaningful terms from Hupy. The **Forum Selection** clause (and **Arbitration** clause) are separate sections clearly marked by headings identifying the substance of the clauses, are printed in legible font consistent with all other contract terms, and are accompanied by personal signature lines that required Hupy to review and agree to each specific clause. (Doc. 10-2); *see Polar Mfg.*

*Corp. v. Michael Weinig, Inc.*, 994 F. Supp. 1012, 1015 (E.D. Wis. 1998) (upholding forum selection clause containing similar formatting).

If the Marketing Contract was too confusing or complex for Kreblin, Hupy had the ability to designate a different representative to review and execute the agreement. Hupy, specifically, could have recruited one of its other 20 attorneys to complete the job or retained outside counsel to conduct a review.[1] Indeed, Hupy's counsel in this case, Todd Korb, seemingly has the ability to interpret and understand the Marketing Contract without difficulty given his role litigating Hupy's contract claims.

Hupy surely cannot claim it lacked the experience, business acumen, or ability to negotiate or enter into the Marketing Contract but then represent itself in this 18-count commercial lawsuit based on that same contract. Hupy's complaint and response brief evidence its confidence and ability to understand and interpret the contract, including the **Forum Selection** and **Arbitration** clauses.[2] Under Wisconsin Model Rule of Professional Conduct 20:1.1 Hupy—through its self-representation in this matter—acknowledges it has the "legal knowledge, skill, thoroughness, and preparation reasonably necessary" to tackle this contract dispute concerning the Marketing Contract.

Additionally, the Marketing Contract was not presented on a take-it-or-leave it basis or forced onto Hupy as is. Quintessa permitted Hupy the opportunity to review the Marketing Contract and make changes to its terms, as established by Kreblin's hand-written notations depicted here:

---

[1] https://www.hupy.com/bio.cfm (last visited July 14, 2021).

[2] Hupy has undoubtedly entered into thousands of retainer agreements with its own clients, so it surely cannot claim ignorance as to the ability to draft, review, and enter into consumer contracts.

> All funding by the Hupy and Abraham S.C. is non-refundable and may only be redeemed by means of pre-qualified leads. The Agreement funding is set at $100,000 per month, and may be increased at the firm's discretion. Up to 20% of funding will be allocated to Commercial leads.
>
> The Hupy and Abraham S.C. will have seven full days (168 hours) to turn down or disengage the lead for approved reasons described below unless otherwise agreed upon in writing by Quintessa. On the seventh day, leads will not be considered for disengagement. Leads that are turned down or disengaged for the approved reasons described in this agreement will be credited back to your Campaign balance once Quintessa has verified and may be subject to internal audit which typically takes 5-7 business days.

(Doc. 10-2 p. 1) (highlighting depicting Kreblin's changes).

Hupy, through Kreblin, was cogent and sufficiently savvy to change contract terms to favor Hupy's desired interpretation. Kreblin's changes support that he reviewed the contract's terms to ensure they favored Hupy. He either reviewed and accepted the **Forum Selection** and **Arbitration** clauses without modification or failed to read those provisions at all. If the latter is true, it does not help Hupy; if a party makes "a practice of signing contracts without reading them, they must bear the consequences." *Northwestern Nat. Ins. Co. v. Donovan*, 916 F.2d 372, 378 (7th Cir. 1990). Either way, Hupy had the opportunity to review the Marketing Contract and make (or at least request) changes before signing it.

Hupy included with its response brief a copy of a marketing contract Quintessa signed with another personal injury firm—seemingly to prove that Quintessa's agent, Lauren Mingee, is well-versed in contract negotiations. (Doc. 15-5). But that other contract showcases Quintessa's practice of allowing its customers the ability to modify is contract—with that contract containing handwritten changes similar to those made by Kreblin. (*Id.* p. 1). That marketing contract also does not contain a forum selection or arbitration clause, supporting that Quintessa does not force those provisions on any client. (*Id.*).

Hupy's preliminary contract with Quintessa further destroys its argument that the operative Marketing Contract is procedurally unconscionable. Hupy admits the prior contract, containing identical terms (including **Forum Selection** and **Arbitration** clauses), was a "success" and hasn't alleged unfair bargaining power or unfair terms with that document. Hupy's

acceptance of the preliminary contract it negotiated and agreed to simply evidences the reasonableness of the identical Marketing Contract at issue here.

Hupy does assert a strange argument related to its preliminary contract with Quintessa—that the "success" of that contract weakened Hupy's bargaining power and, seemingly, forced Hupy into the operative Marketing Contract. To Hupy, after its preliminary deal with Quintessa it:

> lacked meaningful, alternative means to obtain the services offered on a more favorable basis from a different company that did not include an arbitration clause which would require it to arbitrate all contractual and related claims

(Doc. 14 p. 8). Hupy, again, doesn't provide any specifics as to its lack of alternatives via record evidence; it only states in conclusory fashion that it was handcuffed into using Quintessa's services because of its early success utilizing Quintessa's marketing services. (Doc. 14 p. 17). In reality, Hupy ignores the vast market of legal referral companies at its disposal and its own internal marketing campaigns. Indeed, Hupy has apparently successfully retained personal injury clients throughout the Midwest for decades prior to seeking Quintessa's services. Quintessa was not Hupy's only choice for securing personal injury clients in its marketplace.

### b) The Forum Selection clause is not substantively unconscionable under Wisconsin law

If the Court agrees with Quintessa, and finds no procedural unconscionability, the inquiry ends under Wisconsin law. *Pietroske*, 2004 WI App 142, ¶ 1. Regardless, Hupy has not established substantive unconscionability.

Hupy claims substantive unconscionability related to the **Forum Selection** based solely on its position that Hupy has no connection to Oklahoma. Hupy doesn't cite any case law supporting its request to invalidate the **Forum Selection** clause due to its lack of "meaningful connections to Oklahoma" and nothing in the record suggests that an Oklahoma state court

judge would deprive Hupy of its day in court. Hupy simply does not like that it agreed to litigate a claim in Oklahoma.

Wisconsin requires more than a party's mere displeasure with a contract term to establish substantive unconscionability. Substantive unconscionability requires the challenging party to establish that "the terms of [the] contract are unreasonably favorable to the more powerful party," with courts "looking at the contract terms and determining whether the terms are 'commercially reasonable,' that is, whether the terms lie outside the limit of what is reasonable or acceptable." *Wis. Auto Title Loans, Inc. v. Jones*, 2006 WI 53, ¶ 36, 290 Wis. 2d 514, 714 N.W.2d 155 (citation omitted).

Mere inconvenience of a preferred jurisdiction does not render a forum selection clause substantively unconscionable. Venue, choice of law, and forum selection clauses are common place in commercial contracts and serve important purposes—including predictability of jurisdiction, conformity in legal rulings, and giving deference to the parties' intentions. If Hupy's position is correct, any party who executes a contract can simply avoid enforcement of a previously agreed upon forum selection clause based on self-described inconvenience. Courts would be forced to invalidate most forum selection clauses agreed upon by the contacting parties. Surely more is needed than mere inconvenience.

### 2. The Forum Selection clause is not unconscionable under Oklahoma law

Hupy did not address the issue of unconscionability under Oklahoma law despite a clear choice of law clause designating Oklahoma state law as the law governing contract interpretation and disputes. For the reasons discussed in Section A.1 addressing the lack of unconscionability under Wisconsin law, Hupy simply cannot prove unconscionability under Oklahoma's prevailing standard.

Hupy has not established an "absence of meaningful choice"—it freely negotiated and reviewed the contract, had the opportunity to modify its terms, and could have sought other

marketing services if it disapproved of the contract terms Quintessa offered. *Barnes*, 548 P.2d at 1020. And the **Forum Selection** clause is not an "unreasonably favorable" term. *Id.*

Oklahoma's unconscionability standard is more exacting than Wisconsin since Oklahoma "directly relat[es]" unconscionability with "fraud or deceit"—defining an unconscionable contract as one that "no person in his senses, not under delusion would make, on one hand, and which no fair and honest man would accept on the other." *Id.* As discussed in more detail in the section immediately below, Hupy has not alleged or established fraud or deceit in the inducement of the **Forum Selection** clause and no evidence exists suggesting that the Marketing Contract is so unreasonable that no person would ever agree to its terms. On the contrary, Hupy agreed to an identical, preliminary contract without any complaints—a contract it deemed a "success."

**B.** **Hupy did not allege, let alone demonstrate, fraud in the inducement of the Forum Selection clause**

In the teeth of an unambiguous **Forum Selection** clause mandating litigation of all non-arbitrable disputes in Oklahoma state court, Hupy next resorts to claiming Quintessa's alleged fraud invalidates the clause. (Doc. 14 p. 4). But Hupy's fraud position (even if true) does not affect enforcement of the **Forum Selection** clause because Hupy hasn't alleged or identified any facts suggesting that Quintessa fraudulently induced Hupy ***into agreeing to the specific Forum Selection clause*** at issue**.** Hupy, rather, generally alleges that Quintessa misrepresented a substantive contract term (the number of monthly clients), not that Quintessa used fraud to include the forum selection clause. The difference is paramount.

Regardless of choice of law issues, all three jurisdictions (Oklahoma, Wisconsin, and Federal) follow the bright-line rule that a party seeking to avoid a forum selection clause due to fraud must demonstrate fraud in the ***inducement of that specific clause***, not simple fraud relating to the contract as a whole. *M/S Bremen v. Zapata Off-Shore, Co.*, 407 U.S. 1, 13 (1972)

(upholding severability of forum selection clause not touched by fraud, despite general allegations of fraud as to the contract as a whole); *Tucker*, 2014 OK 112, ¶ 27 (citing *Intercall Telecomms., Inc. v. Instant Impact, Inc.*, 376 F. Supp. 2d 155, 160 (D.P.R. 2005) ("Courts must distinguish between challenges to the validity of the underlying contract ... and to the validity of the forum selection clause in particular ... Under the purview of this separability doctrine, a forum selection clause is deemed to be separate from, and independent of, the contract containing it"); *Beilfuss v. Huffy Corp.*, 2004 WI App 118, ¶ 17, 274 Wis. 2d 500, 685 N.W.2d 373 (recognizing that a forum selection clause, to be unenforceable, must be "touched by" fraud); see also *Feeco Int'l, Inc. v. Oxane Materials, LLC*, No. 13-CV0869, 2013 WL 5780435, *2 (E.D. Wis. Oct. 25, 2013).

Oklahoma law governs questions concerning the Marketing Contract and the Oklahoma decisions in *Rawdon*, 2019 OK CIV APP 70, and *Tucker*, 2014 OK 112, defeat Hupy's fraud position. The *Rawdon* court, relying on the Oklahoma Supreme Court's *Tucker* decision and United States Supreme Court precedent, upheld a trial court's finding that plaintiffs could not avoid a forum selection clause due to fraud because they "had not alleged fraud in the inducement of the forum selection clause specifically." *Rawdon*, 2019 OK CIV APP 70, ¶ 22, 24 (citing *Bremen*, 407 U.S. at 13). The *Rowan* court followed the majority rule that a forum selection clause will be enforced as a separable contract provision unless the challenger demonstrates that fraud "relates **to the forum-selection clause itself** as opposed to the contract as a whole." *Id.* (quoting *Tucker*, 2014 OK 112, ¶ 33) (emphasis in original).

Here, Hupy hasn't identified any facts in its response brief or submitted any record evidence alleging or suggesting that Quintessa fraudulently induced it to accept the terms of the

**Forum Selection** clause in the Marketing Contract.[3] Hupy, in conclusory fashion in its response brief, claims fraud in the inducement of the **Forum Selection** clause but presents nothing more. Factually, Hupy only alleges Quintessa misrepresented the number of personal injury clients it could provide (a claim Quintessa denies), but presents no facts, affidavit testimony, documents, etc. suggesting Quintessa lied to convince Hupy to agree to litigate claims in Oklahoma courts. Without any connection between the alleged fraud and the **Forum Selection** clause, that clause is separable and enforceable. *Bremen*, 407 U.S. at 13; *Tucker*, 2014 OK 112, ¶ 12.

## II. The doctrine of *forum non conveniens* supports Oklahoma as the proper venue, as agreed to by the parties

Quintessa needs little argument to respond to Hupy's position as to *forum non conveniens* dictating Wisconsin as the preferred venue. Hupy's position is founded on its position that the **Forum Selection** clause is invalid and, therefore, the Court should consider the parties' private interests—including Hupy's alleged inconvenience in having to litigate in Oklahoma.

The **Forum Selection** clause is valid and controlling in this case, so under Federal *forum non conveniens* standards (and Oklahoma law governing forum selection clauses), Hupy's private interests have no bearing on determining the proper forum for this dispute. *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court for the W. Dist. of Texas*, 571 U.S. 49, 60 (2013); *Warner v. St. John's Northwestern Mil. Acad. Inc.*, No. 18-CV-730-JPS, 2019 WL 403718, *2 (E.D. Wis. Jan. 31, 2019); *Tucker*, 2014 OK 112, ¶ 20.

The only relevant inquiry is the public interest factors discussed at pages 7-9 of Quintessa's opening brief (Doc. 9), which favor venue in Oklahoma as the parties agreed.

Hupy cites to (and attaches to its response brief) a District of Oklahoma decision in which that court transferred an ongoing Quintessa lawsuit from Oklahoma to Missouri. (Doc. 15-4).

---

[3] Hupy did not allege in its Complaint a cause of action based on fraud or fraud in the inducement of the Marketing Contract. (Doc. 1). Hupy only alleged misrepresentation of a single contract term unrelated to the **Forum Selection** clause.

Hupy believes this decision shows that Quintessa's position that public policy factors favor Oklahoma "is entirely meritless." (Doc. 14 p. 13).

Hupy, though, fails to acknowledge that the lawsuit it referenced (in which Quintessa was a plaintiff suing a law firm for fraud) involved a contract that ***did not*** contain a forum selection clause. The Oklahoma federal court, rather, assessed transfer of venue under 28 U.S.C. § 1404(a) and transferred the case to Missouri federal court because of convenience. Of course, a § 1404(a) assessment hinges on many of the private interest factors that are irrelevant in the teeth of a valid forum selection clause.[4] And the District Court judge recognized a principle that rings true in this action—that "[m]erely shifting the inconvenience from one side to the other [] is not a permissible justification for a change of venue." (Doc. 15-4) (quoting *Employer Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1167 (10th Cir. 2010)).

### III.   The Arbitration clause is not unconscionable

In its opening brief, Quintessa asked the Court to forego assessing the issue of arbitrability (or interpreting the enforcement of the **Arbitration** clause) because that issue is proper for an Oklahoma County, Oklahoma court under the valid **Forum Selection** clause. Quintessa, however, alternatively asked the Court to enforce the **Arbitration** provision if the Court did

---

[4] Courts assessing a request for transfer of venue under § 1404(a) consider the following factors:

> plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Texas Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir. 1967).

not enforce the **Forum Selection** clause. Hupy does not challenge the **Arbitration** clause as ambiguous but, again, relies on Wisconsin's unconscionability standard to avoid it.[5]

For the reasons already discussed, Hupy cannot establish that the **Arbitration** clause is unconscionable under Wisconsin law (or Oklahoma law). Hupy is a sophisticated law firm (capable of litigating this contract dispute) that is undoubtedly capable of negotiating a commercial contract and had the ability to thoroughly review and modify the Marketing Contract before executing it. Procedural unconscionability does not exist here.

Without procedural unconscionability, Hupy cannot establish that the **Arbitration** clause is unconscionable. Nonetheless, substantive unconscionability is also non-existent. Hupy's sole argument that the **Arbitration** clause is substantively unconscionable is based on its incorrect interpretation that the  clause is one-sided in that Quintessa can avoid arbitration in favor of civil litigation while Hupy is forced to arbitrate. This is simply not true.

The **Arbitration** clause expressly requires Quintessa, like Hupy, to arbitrate all contract, tort, and equity disputes with the sole exception of giving Quintessa the choice of litigating (in Oklahoma County) any dispute concerning Hupy's potential "non-payment of campaign balances" i.e., seeking a money judgment if Hupy doesn't pay sums owed under the contract. By the plain language of the **Arbitration** clause, all other claims asserted by Quintessa are subject to arbitration before the American Arbitration Association, e.g., issues of arbitrability, declaratory judgment actions seeking interpretation of the contract, any action arising under the agreement in which Quintessa seeks consequential damages, claims founded in equity, claims for injunctive relief, etc. Contrary to Hupy's reading, the **Arbitration** provision is not one-sided and does not unreasonably excuse Quintessa from mandatory arbitration. It

---

[5] Hupy, again, does not explain why Wisconsin law would apply to the issue of enforcement of the **Arbitration** clause considering the Marketing Contract is governed by Oklahoma law. Oklahoma law applies but Hupy failed to address the correct standard.

simply carves out a small exception to expedite the resolution of contract claims seeking judgment for money owed under agreement.

The **Arbitration** clause in the Marketing Contract is nowhere close to the wholly one-sided provision in *Wis. Auto Title Loans*, 2006 WI 53, on which Hupy relies. The arbitration provision in *Wis. Auto Title Loans* granted the contract drafter full access to the courts for any claim while requiring the consumer to arbitrate all his claims, and the court considered several other factors that supported finding that consumer contract of adhesion to be substantively unconscionable.

**IV.  Dismissal of this action, and denial of Hupy's pending injunction motion, is proper**

Hupy contends the Court should permit the parties to conduct discovery on its pending Motion for Temporary Restraining Order (Doc. 3) and, even if it grants Quintessa's motion, stay the case instead of dismissing it.

As to Hupy's position on its Motion for Temporary Restraining Order, Quintessa simply asks the Court to deny the motion as moot should the Court grant the motion to dismiss. It goes without saying that if the Court dismisses this action there's no need to consider any pending motions. Those motions would be rendered moot.

As to Hupy's request for the Court to stay this action, Fed. R. Civ. P. 12(b)(3) allows the Court to dismiss the action if it determines this court is not the proper venue for resolving the dispute. Under the Marketing Contract, Oklahoma County, Oklahoma is the proper venue for any non-arbitrable dispute and AAA Arbitration is the required avenue for arbitrable disputes—this Court is not he correct venue. Thus, dismissal is warranted.

## CONCLUSION

For the reasons provided in Quintessas's opening memorandum and this reply, Quintessa respectfully requests the Court enforce the Marketing Contract to which Hupy agreed and enter an Order:

1. Enforcing the **Forum Selection** clause under the doctrine of *forum non conveniens* and dismissing this action with prejudice.

2. Enforcing the **Forum Selection** clause under Oklahoma (or Wisconsin) law governing the enforceability of those clauses and dismissing this action.

3. Alternatively, enforcing the **Arbitration** clause and dismissing this action in favor of arbitration.

4. Denying as moot Hupy's unbriefed motion for injunctive relief.

Dated: July 14, 2021.                     Davis & Kuelthau, s.c.


                                          By: *Electronically signed by Ryan M. Wiesner*
                                              Ryan M. Wiesner
                                              111 E. Kilbourn Avenue, Suite 1400
                                              Milwaukee, WI 53202
                                              Tel. (414) 276-0200
                                              Fax (414) 278-3643
                                              Email  rwiesner@dkattorneys.com

                                              *Attorneys for Quintessa Marketing, LLC*