# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| HUPY & ABRAHAM, S.C., <br><br> Plaintiff, <br><br> v. <br><br> QUINTESSA LLC, d/b/a QUINTESSA MARKETING, <br><br> Defendant. | Case No. 21-CV-577-JPS <br><br><br> **ORDER** |

**1.     BACKGROUND**

On May 5, 2021, Plaintiff Hupy & Abraham, S.C. ("Hupy") filed a complaint against Defendant Quintessa LLC ("Quintessa"). (Docket #1). Two days later, Hupy filed an emergency motion for preliminary injunction against Quintessa. (Docket #3). Thereafter, Quintessa filed a motion to dismiss pursuant to both Federal Rule of Civil Procedure 12(b)(3) and 12(b)(6). (Docket #8). For the reasons explained in the balance of this Order, the Court will dismiss this case pursuant to the doctrine of *forum non-conveniens*.

**2.     FACTS**

Hupy is a personal injury law firm with locations throughout Wisconsin, Illinois, and Iowa. (Docket #1 at 2). Quintessa is a marketing company based in Oklahoma that provides "bulk marketing" services for law firms throughout the United States. (*Id.*) Although Hupy brings only state-law causes of action against Quintessa, Hupy avers that this Court has jurisdiction pursuant to 28 U.S.C. § 1332. (*Id.* at 1).

Hupy's claims pertain to its February 3, 2021 contract (the "Contract") with Quintessa. (*Id.* at 5). Thereunder, Quintessa agreed to provide bulk marketing services on Hupy's behalf. (*Id.*) Quintessa would also screen potential plaintiffs to ensure that they qualified for Hupy's services. (*Id.*) Hupy paid Quintessa $100,000.00 to pre-fund its marketing account. (*Id.*) For each qualifying motor vehicle accident retainer Quintessa obtained for Hupy, Quintessa would deduct funds from Hupy's marketing account.

Pursuant to the Contract, the parties agreed that any disputes concerning "[t]he validity, construction, and interpretation" of the Contract would be "governed and enforced in accordance with the laws of the State of Oklahoma." (Docket #1-4 at 4). The Contract also included the following arbitration clause:

> Arbitration. Except as otherwise provided below, in the event of any dispute, claim or controversy between or among the parties to this Agreement arising out of or relating to this Agreement or any breach thereof, including, without limitation, any claim that this Agreement or any of its parts is invalid, illegal or otherwise voidable or void, whether such dispute, claim or controversy sounds in contract, tort, equity or otherwise, and whether such dispute, claim or controversy relates to the meaning, interpretation, effect, validity, performance or enforcement of the Agreement, such dispute, claim or controversy shall be settled by and through an arbitration proceeding to be administered by the American Arbitration Association in Oklahoma City, Oklahoma, in accordance with the American Arbitration Association's Commercial Arbitration Rules. Each of the parties to this Agreement hereby agrees and consents to such venue and waives any objection thereto. The arbitrability of any such dispute, claim or controversy shall likewise be determined in such arbitration. Such arbitration proceeding shall be conducted in as expedited a manner as is then permitted by

>the commercial arbitration rules (formal or informal) of the American Arbitration Association. Both the foregoing agreement of the parties to this Agreement to arbitrate any and all such disputes, claims and controversies and the results, determinations, findings, judgments and/or awards rendered through any such arbitration shall be final and binding on the parties hereto and may be specifically enforced by legal proceedings. Notwithstanding the above, arbitration shall not be required for any claims brought by Quintessa as a result of Law Firm's non-payment of campaign balances.

(*Id.*) Additionally, under the Contract, the parties agreed that "[a]ny dispute arising in any way from [the Contract] that is not subject to binding arbitration shall be subject to resolution exclusively in the State District Court of Oklahoma County, Oklahoma." (*Id.*) Further, Hupy agreed that the State District Court of Oklahoma County, Oklahoma would be "the exclusive venue;" and "it and waive[d] any defenses based on in personam jurisdiction." (*Id.*) Chad Kreblin, an attorney and shareholder at Hupy, signed the Contract on Hupy's behalf, and Lauren Mingee, the CEO and Owner of Quintessa, signed the Contract on Quintessa's behalf. (*Id.*; Docket #10-2 at 2).

Eventually, relations between the parties soured. On April 1, 2021, Hupy gave Quintessa thirty day's advance notice that it was not interested in renewing the Contract. (Docket #1 at 9). Hupy also asked Quintessa to "credit" its account to reflect a number of unqualified motor vehicle accident plaintiffs that Quintessa retained on Hupy's behalf. (*Id.*) Ms. Mingee confirmed receipt of Hupy's non-renewal notice via email. (*Id.*) However, Quintessa refused to credit Hupy for some of these unqualified plaintiffs, which, in turn, prompted Hupy to file this action. (*See id.* at 12–15). Believing that Quintessa was continuing to retain plaintiffs on Hupy's

behalf after it terminated the Contract, Hupy filed a motion for an emergency preliminary injunction. (Docket #3).

Shortly thereafter, Quintessa filed a motion to dismiss, requesting that this Court enforce either (1) the forum selection clause, which requires that non-arbitrable disputes to be litigated in state court in Oklahoma County, Oklahoma, or (2) the arbitration clause, which requires Hupy to arbitrate before the American Arbitration Association (the "AAA") in Oklahoma City, Oklahoma.

### 3.   LEGAL STANDARD

Quintessa ask the Court to dismiss this action for "improper venue and failure to state a claim" under both Federal Rule of Civil Procedure 12(b)(3) and (b)(6).[1] (Docket #9 at 1). Although Quintessa recognizes that its contract with Hupy contains both an arbitration clause and a forum selection clause, Quintessa requests that the Court "dismiss this action for improper venue under the Federal doctrine of *forum non conveniens*." (*Id.* at 2).

The Court directs Quintessa to *Atlantic Marine Construction, Inc. v. United States District Court for the Western District of Texas*, 134 S. Ct. 568 (2013). Therein, the Supreme Court explained that Rule 12(b)(3) is the proper vehicle a party must use to dismiss a case for "improper venue," but the Court cautioned that 12(b)(3) is available "only when venue is 'wrong' or 'improper' in the forum in which it was brought." *Id.* at 577. "[W]hether venue is 'wrong' or 'improper' [] is generally governed by 28 U.S.C. § 1391." *Id.*

---

[1] It is unclear why Quintessa asks this Court to dismiss Hupy's complaint for failure to state a claim pursuant to Rule 12(b)(6), as Quintessa has not briefed this issue.

> Pursuant to § 1391 a plaintiff may bring a civil action in:
>
> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391. If any one of the provisions outlined in § 1391(b) are met, venue is proper. To be sure, venue may be proper "irrespective" of any forum selection clause. *Atl. Marine*, 134 S. Ct. at 578. Therefore, a motion to dismiss pursuant to Rule 12(b)(3) is not the proper mechanism for a party to seek the enforcement of a forum selection clause. *See id.* at 579 ("[A] forum-selection clause does not render venue in a court 'wrong' or 'improper' within the meaning of . . . Rule 12(b)(3).").

The Supreme Court instructed that the proper way to enforce a forum selection clause "that point[s] to a particular federal district" is via a motion to transfer under 28 U.S.C. § 1404(a). *Id.* Section 1404(a) gives federal district courts the power to transfer "any civil action or division where it might have been brought or to any district or division to which all parties have consented." However, because the forum selection clause in *Atlantic Marine* pointed to a non-federal forum, the Court recognized that a motion to transfer pursuant to § 1404(a) was not "a suitable mechanism to enforce forum-selection clauses," as that provision only allows for transfer to other federal tribunals. 134 S. Ct. at 579–80.

The Court held that "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine

Page 5 of 13
Case 2:21-cv-00577-JPS   Filed 11/19/21   Page 5 of 13   Document 19

of *forum non conveniens*." *Id.* at 580. The Court reasoned that because § 1404(a) codified the doctrine of *forum non-conveniens* for a subset of cases in which the transferee forum is within the federal-court system, Congress "replaced the traditional [*forum non conveniens*] remedy" with transfer, as opposed to dismissal. *Id.* Yet, "[f]or the remaining set of cases calling for a nonfederal forum . . . the residual doctrine of *forum non conveniens*" applies. *Id.*

Quintessa asks this Court to dismiss this case pursuant to 12(b)(3) for improper venue and to dismiss pursuant to *forum non conveniens*. Notably, Quintessa does not argue that Hupy's decision to file suit in this Court violates § 1391(b) (i.e., that venue is improper). Instead, Quintessa asks the Court to engage in a *forum non-conveniens* analysis. Therefore, the Court will disregard Quintessa's references to Rule 12(b)(3) and treat Quintessa's motion as one to dismiss for *forum non conveniens*. *See Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 894 (7th Cir. 2018) (finding that the trial court judge "was well within his discretion" to treat 12(b)(3) motion as one for *forum non conveniens* because "the dismissal motion plainly invoked the forum-selection clause and asked the court to enforce it").

"In the typical case not involving a forum-selection clause, a district court considering a § 1404(a) motion (or a motion *forum non conveniens* motion), must evaluate the convenience of the parties and various public-interest considerations." *Atl. Marine*, 134 S. Ct. at 581. However, if the case involves a valid forum selection clause, that clause is given controlling weight. *Id.* Further, the parties' "private interests drop out of the equation," and a court's analysis is limited to "public-interest factors." *Mueller*, 880 F.3d at 894 (citing *Atl. Marine*, 134 S. Ct. at 581–82). "Public interest factors may include 'the administrative difficulties flowing from court congestion;

the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law." *Atl. Marine*, 134 S. Ct. at 581 n.6. (internal quotations, alteration, and citation omitted). However, "[b]ecause those factors will rarely defeat a transfer motion, the practical result is that forum selection clauses should control except in unusual cases." *Id.* at 582.

4.  **ANALYSIS**

The Contract contains two forum selection clauses, each requiring the parties to bring specific types of disputes before a non-federal forum. Specifically, the arbitration clause[2] requires the parties to bring a broad range of claims to arbitration in Oklahoma City, Oklahoma. Pursuant to the forum selection clause, any claims that "[are] not subject to binding arbitration" must be brought before the State District Court of Oklahoma County, Oklahoma. As discussed, *supra*, if the Court grants Quintessa's motion, the residual doctrine of *forum non conveniens* requires dismissal, not transfer. *See also Haber v. Biomet, Inc.*, 578 F.3d 553, 558 (explaining that, pursuant to Section 4 of the Federal Arbitration Act, 9 U.S.C. § 4, when an arbitration clause in a contract includes a forum selection clause, a district court outside that forum cannot compel arbitration, but instead must dismiss the action).

In this case, Quintessa's primary request is that the Court enforce the forum selection clause which points to the Oklahoma state court. In its response brief, Quintessa explains that it "asked the Court to forego assessing the issue of arbitrability because that issue is proper for an

---

[2]"An agreement to arbitrate is a type of forum selection clause." *Jackson v. Payday Fin., LLC*, 764 F.3d 765, 773 (7th Cir. 2014).

Oklahoma County, Oklahoma court. (Docket #17 at 12). However, the arbitration clause dictates that "any claim or controversy sound[ing] in contract, tort, equity, or otherwise" and the "arbitrability of any such dispute, claim or controversy" must be settled through an arbitration proceeding. *See supra* at 2–3. Moreover, "courts must heed strong federal policy favoring arbitration by liberally and broadly construing the contractual language concerning the scope of arbitral issues in an arbitration agreement and by resolving all doubts with respect to the contract's coverage in favor of arbitration." *Johnson v. Orkin, LLC*, 928 F. Supp. 2d 989, 1002 (N.D. Ill. 2013). With the benefit of the foregoing, the Court next engages in its *forum non conveniens* analysis as to the Contract's arbitration clause.

### 4.1 Validity of the Arbitration Clause

In *Atlantic Marine*, the Supreme Court "presupposed [the existence of] a contractually valid forum-selection clause." 134 S. Ct. at 568 n.5. In this case, however, Hupy argues that the arbitration clause is unenforceable because it is unconscionable. (*See* Docket #14 at 15–19). To be sure, challenges to the validity of an arbitration clause, as opposed to the entire contract, may be raised before a court even though a challenge to the contract as a whole must be raised before an arbitrator. *Buckeye Check Cashing, Inc.*, 546 U.S. at 444–46. Therefore, the Court will determine whether the arbitration clause is unconscionable. Because the result is the same, the Court analyzes whether the arbitration clause is unconscionable under both Oklahoma and Wisconsin law.

Under Oklahoma law, "unconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties, together with contractual terms which are unreasonable

favorable to the other party." *Barnes v. Helfenbein*, 548 P.2d 1014, 1020 (Okla. 1976). In Wisconsin, for a provision to be unconscionable, the provision must be both procedurally and substantively unconscionable. *Wis. Auto Title Loans, Inc. v. Jones*, 714 N.W.2d 155, 165 (Wis. 2006). Procedural unconscionability relates to "whether there was a real and voluntary meeting of the minds of the contracting parties," requiring courts to consider factors such as "age, education, intelligence, business acumen and experience, bargaining power, who drafted the contract, whether the terms were explained to the weaker party, whether alterations would have been permitted by the drafting party, and whether there were alternative providers of the subject matter of the contract." *Id.* at 165–66. On the other hand, "substantive unconscionability refers to whether the terms of a contract are unreasonably favorable to the more powerful party," and requires the reviewing court to determine whether the terms are commercially reasonable. *Id.* at 166.

Hupy argues that Chad Kreblin's education, business acumen, and experience "bears no relevance" to the parties' meeting of the minds. (Docket #14 at 17). Hupy notes that, during his twenty years as an attorney, Mr. Kreblin primarily practiced personal injury law, not contract law. (*Id.* at 7, 17). According to Hupy, because Ms. Mingee's "presumed" daily responsibilities consisted of drafting, reviewing, and signing similar contracts, her experience was unique when compared to Mr. Kreblin's and, thus, his education, experience, and business acumen are irrelevant. (*Id.* at 7, 17). The Court dismisses Hupy's argument out of hand, as it is inconceivable for Hupy to ask this Court to disregard Mr. Kreblin's credentials when determining the parties' meeting of the minds. Even if the Court entertained Hupy's argument that Mr. Kreblin is a litigator and, thus,

is less experienced in the realm of contract law, he was clearly experienced enough to make handwritten modifications to other provisions of the contract. (Docket #17 at 5–6).

Hupy also argues that because its business dealings with Quintessa prior to their entering into the Contract were successful, Quintessa had leverage over Hupy. (Docket #14 at 17). According to Hupy, because things went well between the parties prior to February 3, 2021, Hupy "lacked alternative means to obtain services offered from a different company that did not include a[n] [arbitration] clause." (*Id.* at 8, 17). This argument is illogical. The success of the parties' relations prior to their entering into the Contract never precluded Hupy from looking for an alternative marketing provider. The Court finds Hupy's arguments of procedural unconscionability unavailing.

Hupy also argues that the arbitration clause is substantively unconscionable because it excepts any claims by Quintessa regarding Hupy's nonpayment from arbitration. (Docket #14 at 18–19); *see supra* 2–3. Hupy equates this provision with the arbitration provision in *Wisconsin Auto*. The provision at issue gave the lender a choice of forum as to all claims but required the borrower to submit to arbitration. *Wis. Auto*, 714 N.W.2d at 172–74. The state supreme court determined that this arbitration clause was substantively unconscionable. *Id.* at 174. While the arbitration clause in the Contract gives Quintessa a choice to submit any claims for Hupy's non-payment to arbitration or to a court, this carve out is narrowly tailored. Quintessa must bring all other claims to arbitration. Therefore, the Court does not find that the arbitration clause is substantively unconscionable on this ground.

Hupy also argues that the arbitration clause is substantively unconscionable because it requires Hupy to arbitrate in Oklahoma City, Oklahoma which is approximately 870 miles from Milwaukee, Wisconsin. (Docket #14 at 19). According to Hupy, this contravenes the AAA's protocol, which requires that arbitration be conducted at a mutually convenient location. However, if Hupy was concerned about the location of the arbitration, it could have negotiated for a more convenient forum.

Based on the foregoing, the Court determines that the arbitration clause is also valid under Oklahoma law because Hupy had meaningful choice and because the arbitration clause's terms were not unreasonably favorable to Quintessa. Thus, the Court will proceed with its *forum non conveniens* analysis.

### 4.2 Public Interest Factors

Upon determining that a forum selection clause is valid, the party that has defied the forum selection clause "bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Atl. Marine*, 134 S. Ct. at 581. Because the parties' choice, as expressed in the forum selection clause, "deserves deference," it is Hupy's responsibility to show "why the court should not transfer the case to the forum to which the parties agreed." *Id.* at 582. As discussed *supra*, "a district court may consider arguments about public interest factors only," because "when parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient for themselves or their witnesses, or for their pursuit of litigation." *Id.* Again, such public interest factors "rarely defeat a transfer motion." *Id.*

Hupy argues that Wisconsin has an interest in having localized controversies decided in Wisconsin. (Docket #14 at 12). It explains that the

Contract is "localized" because (1) Hupy is headquartered in Wisconsin and (2) the motor vehicle accident plaintiffs that Quintessa retained on Hupy's behalf are based in Wisconsin, Illinois, and Iowa. (*Id.*) Hupy argues that because it did not go to Oklahoma to draft or effectuate the Contract, this controversy is "clearly" localized. (*Id.*)

Once again, the Court finds Hupy's arguments unavailing. Just as Hupy is headquartered in Wisconsin, Quintessa is headquartered in Oklahoma. By Hupy's logic, Quintessa's presence in Oklahoma, as a party to the Contract, would mean that this dispute is also "localized" in Oklahoma. Next, Hupy's argument that some of the plaintiffs Quintessa retained for Hupy are from Illinois and Iowa does not support a determination that this dispute is localized in Wisconsin. Finally, just as Hupy did not go to Oklahoma to sign the Contract, Quintessa did not come to Wisconsin to do the same. (*See* Docket #1 at 6) ("On February 3, 2021, [Hupy] emailed the executed contract to [Quintessa] . . . .").

Hupy concludes by noting that "there is generally a public interest in having the trial of a diversity case in a forum that is at home with the law." (Docket #14 at 14). However, the parties dispute whether Oklahoma law or Wisconsin law applies. Notably, in *Atlantic Marine*, the Supreme Court made clear that "the court in the contractually selected venue should not apply the law of the transferor venue to which the parties have waived their right." 134 S. Ct. at 583. Therefore, Wisconsin law will not automatically follow this case as the "governing law" in this case.

Finally, the Court notes that pursuant to the instruction of the Supreme Court, "the interest of justice" is best served by holding the parties to their settled expectations as evidenced in their contract. *Id.* Thus, the

Court finds that Hupy has not established that transfer to arbitration in Oklahoma is unwarranted.

5.  **CONCLUSION**

For the reasons stated in this Order, the Court will dismiss this case pursuant to the doctrine of *forum non conveniens*. The Court will also deny as moot Hupy's motion for a preliminary injunction, (Docket #3).

Accordingly,

**IT IS ORDERED** that Quintessa LLC's motion to dismiss (Docket #8) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Hupy and Abraham S.C.'s motion for preliminary injunction (Docket #3) be and the same is hereby **DENIED as moot**; and

**IT IS FURTHER ORDERED** that this case be and the same is hereby **DISMISSED without prejudice** pursuant to the doctrine of *forum non conveniens*.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 19th day of November, 2021.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge